149 So.2d 152 (1963)
Frederia BERTRAND, Sr., Plaintiff and Appellee,
v.
TRUNKLINE GAS COMPANY and Indemnity Insurance Company of North America, Defendant and Appellant.
No. 740.
Court of Appeal of Louisiana, Third Circuit.
January 28, 1963.
*153 Porter & Scofield, by Thomas F. Porter and John B. Scofield, Lake Charles, for defendant-appellant.
Knight & Knight, by Herschel N. Knight, Jennings, for plaintiff-appellee.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiff seeks damages for personal injuries sustained in an automobile collision. From a judgment awarding plaintiff $3,000, the defendant has taken this appeal.
Plaintiff contends the accident was caused solely by the negligence of the employee of defendant, Trunkline Gas Company, in parking the company's pickup truck partially on the highway near the bottom of the approach to a bridge, without providing the required warning flags. The gas company denies any negligence on the part of its driver and in the alternative alleges contributory negligence by the plaintiff as a bar to his recovery.
The accident occurred at about 7:30 a. m. on February 24, 1958. It was misting rain with a little fog. Visibility was only fair. The situs of the collision is on blacktopped Louisiana Highway No. 101, about 100 feet south of a bridge over an irrigation canal. The bridge itself is approximately 100 feet in length. The highway is straight for some distance north and south but it is not level, because the bridge is several feet high, requiring an upgrade in the highway approach to each end. The blacktop was wet and slippery.
The gas company employee had parked its pickup truck on the west side of the road about 100 feet south of the bridge and part way down the grade. Approximately one-half (3½ feet) of the width of the truck was on the paved portion of the highway. The driver of the truck testified that he had parked there and gone about 100 feet off the highway into a field to "blow a valve" of the defendant gas company. The narrow width of the shoulder at that point prevented his getting further off the road, but he admitted he could have parked his truck completely off the highway, either 300 yards north or south. No flags or other warning devices were put out. It is contended that the driver left his blinker turning lights on.
Plaintiff was driving south in an automobile owned by his son. (The son is plaintiff in the companion suit entitled "Frederia Bertrand, Jr. vs. Trunkline Gas Company, et al.") He was proceeding at a speed of 30 to 35 miles per hour. Pictures taken on a clear day after the accident, show that when plaintiff reached a point 132 feet north of the bridge, that is, a total of 332 feet from the parked truck, he could see its top. It was not until he reached a point on the north end of the bridge, that is, about 200 feet from the truck, that he could see the entire truck and observe that it was parked partially on the highway. At the same time a vehicle was approaching the parked truck from the south traveling north. On seeing this approaching vehicle and realizing the emergency caused by the obstructing truck, plaintiff applied his brakes and began to slide while still on the bridge. As he continued to slide his vehicle turned counterclockwise. The right side of the Bertrand automobile struck the left rear of the truck and then bounced off and struck the approaching vehicle which had stopped.
The first issue is whether the driver of the gas company truck was guilty of negligence in parking on the paved portion of the highway. Applicable here is LSA-R.S. 32:241 (A) which reads as follows:
"A. No person shall park any vehicle, attended or unattended, upon the main traveled portion of any highway, outside of a business or residence district, when it is practicable to park it off the main traveled portion of the highway. In no event shall any person park a vehicle, attended or unattended, upon a highway unless an unobstructed width of not less than fifteen feet upon the *154 main traveled portion of the highway opposite such parked vehicle is left free for passage of other vehicles, nor unless a clear view of such vehicle exists from a distance of at least two hundred feet in each direction upon the highway. Even then, if such vehicle is left parked, attended or unattended, one half hour after sunset or one half hour before sunrise, the person parking it shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence."
The first sentence of the above quoted statute prohibits any person from parking on the main traveled portion of the highway "when it is practicable to park it off the main traveled portion of the highway." In the instant case, defendant's driver admitted that he could have parked entirely off the blacktop, either 300 yards north or south of the place where he stopped. There is no contention that the truck was disabled so as to excuse the driver under LSA-R.S. 32:241(B). The remaining portions of LSA-R.S. 32:241(A) quoted above, apply to situations where it is either impracticable or impossible to park entirely off the main traveled portion of the highway and require that even under those circumstances a vehicle cannot be parked on the highway unless it leaves at least 15 feet of clearance and a clear view of such vehicle for a distance of at least 200 feet in each direction of the highway. It may be that in the instant case the truck driver has barely complied with these requirements as to clearance and view, but these portions of the statute have no application here because it was practicable for the gas company employee to park entirely off the blacktop by simply going 300 yards north or south.
Furthermore, the gas company driver has admittedly violated LSA-R.S. 32:442 which requires that the trucks stopped upon or immediately adjacent to the main traveled portion of the highway, must place signal flags behind and in front of the truck at a distance of approximately 100 feet and in such a position as to be visible to all approaching traffic.
The violation of these statutory provisions is negligence per se.
In addition to finding that the truck driver, by violating the said statutory provisions, is guilty of negligence per se, we think that he was negligent for failing to use reasonable care under the circumstances, i. e., parking on the main traveled portion of the highway near the bottom of an incline, in a misting rain, with the pavement slippery, in a position where visibility of the truck was not clear for a vehicle approaching from the north, and without giving any warning or protection whatever. The obstruction of a highway, unguarded and unprotected, near the foot of an incline, where it cannot be clearly seen by approaching traffic, constitutes the grossest kind of negligence. United States Fidelity & Guaranty Co. v. Powell, 131 So.2d 168 (La.App. 2nd Cir., 1961) and the cases cited therein.
Having found the gas company driver guilty of negligence, the next question is whether such negligence was a legal cause of the accident. Applicable here is the recent case of Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962) where, in a similar factual situation, our Supreme Court rejected the doctrine of "passive negligence", as placing "undue emphasis on the chronology of the negligent acts and omissions." Applying this holding to the instant case, it cannot be argued that the negligence of the truck driver is not a legal cause of the accident under the theory that any such negligence had become passive and the subsequent intervening negligence of the plaintiff was the sole "proximate" cause of the accident.
In cases like the present one, the Dixie Drive It case establishes two general tests for determining whether or not the negligence of the parked vehicle was a legal cause of the accident. The first inquiry is whether the negligence of the obstructing *155 driver was a "cause in fact of the collision" and the second is whether or not the plaintiff is a member of the class of persons sought to be protected by the statute or safety rule which was violated. In the present matter there can be no question but what the negligence of the obstructing truck was a cause in fact of the collision, i. e., the accident would not have happened if the truck had not been illegally parked on the highway. It is also apparent that the plaintiff was a member of the class sought to be protected by the statute. It is noteworthy that in the Dixie Drive It case the court stated: "The display of the signal flags at a specified distance from the vehicle is designed not only to warn of the presence of the vehicle on the highway, but also to give notice to all approaching traffic that the vehicle is stationary. A stationary vehicle and a moving one require different driving actions by an overtaking motorist. A momentary delay in the recognition that a vehicle is stationary may create a dangerous traffic situation. The signal is designed to arrest the attention of all approaching driverseven an inattentive one."
We conclude that the obstructing truck driver's negligence was a legal cause of the collison under the tests laid down in the Dixie Drive It case, supra.
In an alternative plea, the defendant contends plaintiff's recovery is barred by his contributory negligence, in failing to keep a proper lookout, failing to keep his vehicle under control and driving a vehicle with defective brakes. Defendant contends plaintiff should have seen the parked truck in time to avoid the collision. A picture, introduced in evidence by defendant, shows that from a point 132 feet north of the bridge, that is a total of 332 feet north of the parked truck, the plaintiff could see the top of the truck. Another picture, taken 45 feet north of the bridge, that is a total of 245 feet north of the parked truck, shows that plaintiff could see that portion of the truck above the wheels by the time he reached that position. However, other pictures filed in evidence show that it was not until after plaintiff came on the bridge itself that he could see the entire truck. Plaintiff testified that he did not actually see the parked truck until he was on the bridge. It was about this same time that plaintiff saw the approaching vehicle, realized a dangerous traffic condition existed and applied his brakes. This testimony is corroborated by the gas company's employee, Mr. Taylor, who was standing in a field about 100 feet from the road when he looked around and saw plaintiff's vehicle on the bridge. Mr. Taylor testified that plaintiff applied his brakes between the middle and the south end of the bridge and started skidding, but the car "went in a spin and hit the truck".
Under the circumstances we do not think the plaintiff was guilty of any negligence. In view of the fact that plaintiff's visibility was partially obscured by the misting rain and fog, and defendant's driver had not put out the signal flags required by LSA-R.S. 32:442 as discussed above, we do not think that reasonable care under the circumstances required that plaintiff see the truck, and, what's more important, see that it was parked and obstructing the highway, until after he arrived on the bridge. He was then only 200 feet at most from the truck. At a speed of 30 to 35 miles per hour he was traveling about 48 feet per second. We think he did very well indeed to see the truck, see the approaching car, realize the dangerous situation and then apply his brakes and start skidding by the time he reached the south end of the bridge. He had to do all this in about two seconds.
The case of United States Fidelity & Guaranty Co. v. Powell, 131 So.2d 168 (La. App. 2nd Cir., 1961) involved a very similar factual situation. There, a fire truck, going 25 miles an hour, came over a hill at the bottom of which, some 400 to 500 feet distance, a vehicle was parked obstructing the street. The fire truck driver realized the situation when he was about 300 feet from the obstructing vehicle, and applied his brakes, but skidded and a collision occurred. *156 On the issue of the contributory negligence of the fire truck driver, the court held as follows:
"A motorist has the right to assume that a street is safe for travel and free of obstruction. As was said in Reeves v. State, La.App.2d Cir., 1955, 80 So.2d 206, 210,
"`The general rule is also well established and recognized in the jurisprudence of this state that a motorist using a public highway has a right to presume and to act upon the presumption that the highway is safe for the usual and ordinary traffic, either in daytime or at night, and that he is not required to anticipate extraordinary danger, impediments or obstructions to which his attention has not been directed.'" (Citation of authorities omitted)
Defendant's contention that plaintiff's brakes were defective is based on the testimony of the investigating trooper that the "pedal went to the floor" after the accident. However, the trooper stated the brakes could have "gone out" as a result of the collision. Furthermore, plaintiff showed the brakes were repaired a week before. Finally, defendant's own witness, Mr. Taylor, stated plaintiff applied his brakes and skidded. We agree with the district judge that defendant has failed to prove plaintiff's brakes were defective.
The final issue is the quantum of damages. The trial judge awarded $3,000. Defendant contends the award is excessive.
The record shows that on the day of the accident, February 24, 1958, plaintiff went to Dr. Charles Brunt, who diagnosed injuries to the chest and the right elbow. Dr. Brunt saw plaintiff on nine subsequent office visits, principally for complaints of the injury to the ulna nerve at the elbow. Treatment consisted of medicine for pain and the use of heat and massage. The last examination was on September 26, 1960, at which time Dr. Brunt found plaintiff was still suffering with his elbow but was of the opinion it would subside with the passage of time.
On October 12, 1960, plaintiff was examined by Dr. Morin, an orthopedic specialist, who diagnosed plaintiff's injury as a "tennis elbow" or a radial humeral bursitis. As to prognosis, Dr. Morin opined that since plaintiff had already suffered this condition for three years since the accident, it was unlikely that further conservative treatment would help and it was probable that surgery was indicated. Dr. Morin testified that this condition did cause pain and that it would prevent plaintiff from strenuous use of his arm.
Under the above facts we find no manifest error in the lower court's award of $3,000.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.