182 So.2d 665 (1965)
Charlie J. MUSE et al., Plaintiff-Appellants,
v.
W. H. PATTERSON & COMPANY, Inc., et al., Defendant-Appellees.
No. 6495.
Court of Appeal of Louisiana, First Circuit.
December 21, 1965.
Rehearing Denied January 24, 1966.
Sylvia Roberts, of H. Alva Brumfield, Nealon Stracener, Baton Rouge, for appellant.
Tom F. Phillips and Wm. A. Norfolk, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before LOTTINGER, LANDRY, REID, BAILES and F. S. ELLIS, JJ.
BAILES, Judge.
This is a tort action. The plaintiffs are Charlie J. Muse and his wife, Shirley J. Muse, and the defendants are W. H. Patterson & Company, Inc., and its liability insurer, Travelers Insurance Company, and Barber Brothers Company and its liability insurer, National Surety Corporation. The plaintiffs brought this action against all defendants to recover both special and general damages sustained by them in an accident involving the plaintiff-husband's vehicle and a vehicle owned and driven by a man named Marwan Haidary.[1]
Prior to trial on the merits, by joint motion of all parties, Barber Brothers *666 Company and National Surety Corporation were dismissed from the suit, with prejudice.
The trial court rejected the demands of all parties to this and the companion suit, and each plaintiff has perfected a devolutive appeal to this court.
The accident which ultimately resulted in the filing of this action occurred about eleven p. m., on the night of October 23, 1958, on the Jefferson Highway in the City of Baton Rouge. The plaintiffs, Charlie J. Muse and his wife, were driving toward New Orleans, or in an easterly direction. The Muses resided in New Orleans and were returning home from a trip to Clinton, Louisiana. The plaintiffs' vehicle was a 1950 Buick sedan, and plaintiff, Muse, testified that his speed immediately prior to the collision was from 40 to 45 mph, and he and his wife were the only passengers in his vehicle.
Marwan Haidary, plaintiff in the companion suit testified that just prior to the accident he was driving his 1953 Ford sedan at a speed of 25 to 30 mph; that he was driving west on this highway, having entered it about four to five blocks east of the situs of the accident.
On the date of the accident, the defendant, W. H. Patterson Company, Inc., was fulfilling its obligation under a contract for the widening and resurfacing of the highway. The highway was being extended in width from twenty-two feet to twenty-six feet. By the date of this accident, the highway had been resurfaced, however the dressing of the shoulders had not been completed. The evidence shows that the shoulder of the road was from four to fourteen inches lower than the finished surface of the highway, and the new surface was very black and the shoulders were either white or a very light color. In other words, there was a marked contrast between the color of the paved highway and the shoulder area.
This accident occurred in a curve which bent from Haidary's right to his left. He testified that as he entered this curve both right wheels dropped off the paved portion of the road on to the shoulder. In his efforts to regain the blacktopped portion of the highway, he lost control of his vehicle, skidded 181 feet, according to the testimony of Officer Tate, and collided headon into the Muse vehicle. The investigating officers testified that the Muse vehicle was located on its proper or right side of the highway, and the point of impact was located on that side of the highway.
Upon seeing the Haidary vehicle out of control, Muse testified that he put his brakes on and then the collision occurred. The evidence shows that the Buick skidded forty-two feet, and then was knocked backward a distance of eight feet by the force of the impact of the Haidary vehicle.
A Mr. Edwards testified that he was driving in the rear of the Muse vehicle and that Haidary was coming pretty fast.
The only act of negligence alleged to have been committed by the defendant is found in Article 11 of plaintiffs' petition, which states:
"That said accident was caused by the negligence of said defendants in excavating said shoulder without providing barricades, adequate lights or warnings of the dangerous condition of said roadway."
Aside from its contractual obligations to the Department of Highway, it is well established that a contractor is under a duty to give notice to the traveling public on a highway under construction open to public use of any unusual or hazardous condition of the road. However, the mere breach of duty or the commission of an act of negligence does not alone render the contractor liable for damages resulting from an accident on such a highway. It is well settled and established in our law that the act of omission or act of commission must be the sole proximate or a proximate cause of the accident for the party guilty of the breach of duty *667 to be liable for the resulting damages. See: Hernandez v. Pan American Fire & Cas. Co. (1963) La.App., 157 So.2d 923; Day v. National United States Radiator Corp. (1961) 241 La. 288, 128 So.2d 660; Hoyt v. Amerada Petroleum Corp. (1953) La.App., 69 So.2d 546; Adams v. Great American Indemnity Company (1959) 116 So.2d 307.
While the defendants argue rather vigorously that the highway was properly and adequately signed as to give notice to the traveling public that the shoulders were low, from our perusal of the testimony on this score offered by both the plaintiffs and the defendants we are constrained to agree with the trial court in its finding of fact that there were no signs visible to Haidary advising him of the presence of low shoulders. The only sign found to be present was located at a point west of the situs of the accident.
However, we believe this is not decisive of the issue between the parties because of the effect of the testimony of Marwan Haidary as to his knowledge of the condition of the road. The pertinent portions of his testimony follows:
(Haidary Deposition, page 8)
"Q. Now other than the fact that you noticed that the road was new tar, new blacktop, did you notice anything else unusual about the condition of the road as you drove down it?
A. Well I noticed there is difference between the blacktop of the road and the shoulders of the highway in the area I was traveling.
Q. Now you told us as you drove down the road you knew that the composition of the road was new blacktop. Did you notice what the composition of the shoulder was you proceeded down the road?
A. I really don't know the composition.
Q. How about color, were you able to see a difference in color?
A. Maybe it is white or yellow, I am not sure about it.
Q. As you drove down that road did you notice anything else unusual about it?
A. As I drove on the road it was I noticed that construction was going on on it, although they don't have signs. The shoulders wasI knew that because I noticed as the shoulders washad well it is not on the same level with the blacktop.
Q. I see.
A. But I didn't know how much farther that was, you know, the difference, how much farther, or if this would constitute a danger or not. I couldn't tell, because I was travelling.
Q. In other words, sir, as you were travelling down the road you were not able to tell how much difference there was between the height of the road and the height of the shoulders, is that correct?
A. That is right. How could I tell since there was no warning signs.
Q. All right.
A. It was night. I assumed everything was O.K.
Q. Now as you approached the scene of the accident, describe in your own words what happened?
A. At a point where the curved street, the curved highway, I noticed that the right side of my wheels, wheels of the car, they dropped off suddenly and accidentally off the highway to the shoulder of the highway. Then I assumed since I was travelling in a very normal speed I assumed it is O.K. to get back on the *668 highway. And I believe I tried to get on the highway, and I remember then the next thing I was in the hospital."
The trial judge, in his written reasons for judgment in favor of the defendants, in part, stated:
"There are several factors which lead this court to the conclusion that the omission by W. H. Patterson and Company was not the proximate cause of the accident here. The first is that Haidary's own statements indicate that he was aware of the fact that the highway was under construction and that the shoulders were low.
* * * * * *
"Secondly, from the evidence it appears that Haidary was driving at a considerably higher rate of speed than 25 to 30 miles per hour (as he stated in his deposition). Officer Tate testified that Haidary's Ford left 181 feet of skidmarks. It would seem incredible that an automobile traveling at a rate of only 25 to 30 miles per hour would leave skidmarks of that length and still hit an approaching car with enough force to knock it back eight feet. Also, Mr. Edwards who was called as a witness on behalf of the plaintiff, stated on cross-examination that Haidary was driving pretty fast.
"Thirdly, it would seem that Haidary was operating his automobile in a careless manner when he allowed it to leave the highway. The highway had been newly widened to a width of 26 feet, making his lane 13 feet wide. Haidary's Ford had adequate lights, and street lights were on in the vicinity. Also, Haidary stated in his deposition that he observed the color contrast between the asphalt and the shoulder.
"In the last place, it would seem that Haidary was negligent in attempting to pull his right wheels back onto the highway under the existing conditions. A reasonably prudent driver should realize that such a manuever can be perilous, and that it should be performed in a very careful manner. Haidary must have become aware of the extent of the drop-off when the right side of his car left the highway. Also, he must have observed the approaching automobiles in the opposite lane.
"In summary, it is evident that the proximate cause of the accident here was Haidary's negligent operation of his vehicle, and not the failure of the defendant construction company to warn him of the dangerous conditions existing due to the low shoulders. He had a wide lane to travel in, and he should have had no difficulty in seeing it, since he had adequate lights on his Ford, and additional lighting was furnished by street lights in the area. Furthermore, he said that there was a color contrast between the new asphalt surface and the shoulders. He had previously been put on notice of the low shoulders by his own powers of observation. Low shoulder signs would have told him nothing more than what he already knewthat the shoulders were lowthey wouldn't have told him how low the shoulders were. The evidence just does not support a finding that Haidary operated his vehicle in the manner that a reasonably prudent man would have, having the same knowledge of the existing conditions on the highway that Haidary had."
We concur in these findings of facts and the comments thereon by the trial judge.
Defendants cite the causes of Sumrall v. Aetna Casualty & Surety Co. (1960) La.App., 124 So.2d 168, and Harvey v. Great American Indemnity Co. (1959) La. App., 110 So.2d 595, as authority for urging the affirmance of the trial court's finding that the sole proximate cause of the accident was the negligence of Haidary.
*669 We find that both of these cases are in point and decisive of the issue before us. In the Sumrall case, the plaintiff's deceased husband was a passenger in an automobile which ran off on to the low shoulder of a highway and struck a water tank truck owned and used by the defendant contractor in the road construction work. In her petition, plaintiff alleged that the defendant contractor was negligent in not placing proper signs and warnings of the road condition and that such negligence was a proximate cause of the accident. On this contention, the court said:
"* * * Nor could it be said that, even if it be conceded appropriate warning signs were posted, such failure constituted a proximate cause of the accident. Admittedly Sumrall had full knowledge of all the facts pertaining to the highway construction, the completion of the surfacing, and the existence of the low shoulders. Posting of additional signs would not have given him more information than he already had.
"`Proximate cause' is generally defined as any cause which is natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred; and from which it ought to have been foreseen or reasonably anticipated by a person of ordinary prudence in the exercise of ordinary care that the injury complained of, or some similar injury, would result therefrom as a natural and probable consequence. 65 C.J.S. Negligence § 103, p. 645."
In rejecting the claim of the plaintiff in the case of Harvey v. Great American Indemnity Co., supra, against the contractor for allegedly failing to warn motorist of the road condition, the court stated:
"* * *
"The application of these legal principles to the issues herein presented, raises two questions: (1) Can the failure of Winford or his agents to give warning of the slick condition of the highway after it commenced raining on the evening of July 31, 1956, be deemed to have been a proximate cause of the accident? and (2) Can the act of Ford in following the Mercury automobile and not maintaining a safe distance between the two vehicles be said to constitute a proximate cause of the collision which occurred?
"In our opinion the only negligence which may be chargeable to Winford must be predicated on failure to warn unsuspecting motorists of a dangerous condition existing on the roadway. The evidence conclusively shows Winford conformed to the specifications prescribed in his contract as to the application of the asphalt material to the surface of the highway, and the road was open to the public by direction of the State Highway Department. Therefore, there was no breach of general obligation to the public by Winford unless it was due to failure to give adequate warning to motorists of the road condition. In this respect it is proper to examine the evidence in order to ascertain if Ford did know or should have known of the condition of the road of which he complains.
"We think Ford was fully cognizant of the condition of the highway from the time he first applied his brakes and at which time he was more than 600 feet distant from the locus of the accident. He had traversed the road in both directions on his several trips on that very day and he could not have failed to observe a sign at the southern end of the repair work warning travelers toward Homer of fresh oil on the surface of the highway. Nor do we think he could have failed to realize the road was slick when he had made application of his brakes on the first curve, at which time he says his trailer attempted to jackknife.

*670 Surely, it was incumbent upon him after this incident to foresee that any sudden stopping movement would likely cause his vehicle to get out of control. Notwithstanding this knowledge of the slippery condition of the roadway he continued to follow too closely behind the Mercury and was unable to cope with the situation which developed when the Mercury began to come to a stop. Ford should have anticipated this action of the Mercury for he had noticed the lights of Walker's car and others from a distance. We do not doubt he could and should have maintained a safe stopping distance from the Mercury. He was a driver of many years experience and certainly should have been able to have maintained proper control over his vehicle over a distance of 500 or 600 feet, under the existing circumstances. The Mercury being carefully driven experienced no difficulty in traveling over the affected portion of the highway. For these reasons we think that the sole and proximate cause of the accident was the act of Ford in driving too closely behind the Mercury with full knowledge of the existing road conditions and in our opinion Winford should be absolved from liability."
In their brief, appellants urge that "Assuming arguendo that Haidary was negligent, defendant's negligence was a proximate, contributory cause of the accident * * *, citing the case of Dixie Drive it Yourself System New Orleans Co. Inc. v. American Beverage Company, et al (1962) 242 La. 471, 137 So.2d 298.
They contend that "in the instant case, had there been adequate lighting and signs, Haidary would have been aware of the sharp discrepancy existing between the paved portion of the highway and the unfinished shoulders. The duty imposed upon the contractor, to give warning of dangerous conditions comprehends the risk of an inattentive driver, who like Haidary, possibly perceived that construction was underway, but does not have warning of the gravity of the situation, and due to his ignorance, inflicts injury on innocent third-parties."
Considering the Dixie-Drive-It case, we do not find that it is applicable under the facts of the instant case. By averting to the testimony of Haidary quoted supra, it is observed in analyzing it that Haidary was aware that construction work on the road was in progress even though there were no signs and that the shoulders were not of the same level as the blacktop, in other words, that the shoulders were low. As stated by the trial judge, that is all the signs would have told Haidary. Considering the knowledge of the road condition that was possessed by Haidary, we are unable to find in what possible manner a warning sign would have served to avert this accident. An entirely different situation existed in the Dixie-Drive-It case because the driver of the truck approaching the stopped truck had no knowledge of its presence in his lane of travel on the highway ahead of him. These cases are clearly distinguishable on the facts. The purpose of signs was to impart knowledge on a road condition to the traveling public. If it already possesses this knowledge, the signs then become superfluous.
Appellants also cite the cases of Steagall v. Houston Fire & Cas. Ins. Co. (1962) La. App., 138 So.2d 433, and Moses v. Central Louisiana Electric Company (1963) 4 Cir., 324 F.2d 69. These cases are inapposite.
It is our conclusion that the sole proximate cause of this accident was the negligence of Marwan Haidary in operating his vehicle at an excessive rate of speed, not keeping a proper lookout ahead, and in carelessly driving his vehicle off the blacktopped portion of the highway on to the low shoulder, thereby losing control of his vehicle and colliding with the Muse vehicle, and there is no causal relationship between the absence of warning signs *671 and the collision between the vehicles of Charles J. Muse and Marwan Haidary.
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' cost.
Affirmed.
NOTES
[1] Consolidated for purpose of trial in the district court and for hearing in this court was the companion case of Haidary v. Patterson & Company, Inc., on the docket of this court, 182 So.2d 671; Separate opinion will be rendered in this companion case, however the question of liability in both cases will be resolved in this opinion.