### BOOTH v. LOUISIANA & A. RY. CO.*
### No. 17012.

Court of Appeal of Louisiana. Orleans.
March 13, 1939.

*Rehearing denied March 27, 1939; writ of certiorari denied by Supreme Court May 1, 1939.

A. L. Burford, of Texarkana, Ark., and Milling, Godchaux, Saal & Milling, of New Orleans, for appellant.

Johnston Armstrong, of New Orleans, for appellee.

JANVIER, Judge.

Johnny Booth, a colored laborer, sustained physical injuries at about 11:40 o'clock on the night of January 25, 1937, when he stumbled over an obstruction alongside one of defendant's tracks at the crossing of Hagan Avenue (Jefferson Davis Parkway) in this city. He maintains that the obstruction over which he stumbled was a railroad rail, which had been placed upon a mound of earth, with one end extending several feet beyond the mound, and that there were no warning lights sufficiently near to the said rail to indicate its presence or to call to his attention the necessity for using extra precautions in walking where he did.

Defendant asserts that there was no such rail present and that, furthermore, there were adequate warning lights placed sufficiently near to indicate to anyone that repair work was going on and that caution should be exercised in passing to and fro over that crossing.

In the district court there was judgment for plaintiff for $345. Defendant has appealed and plaintiff has answered the appeal, maintaining that the amount awarded is insufficient and that the judgment should be increased to $595, the amount originally prayed for.

It is rather difficult to describe the scene of the accident and the location of the various physical factors to which consideration must be given in reaching a determination as to whether plaintiff was guilty of negligence in departing, to some extent, from the regular route of pedestrians going in the direction in which he was proceeding. Yet, a clear mental picture of the entire locus in quo must be formed in order to understand just what occurred and just what negligence there may have been, either on the part of plaintiff, or on the part of the employes of defendant.

Hagan Avenue is a very wide, double driveway street, having a broad neutral ground in the center. It crosses the New Basin Canal at a right angle, but the bridge over that canal is only about 20 feet wide, so that both driveways converge and merge into one on both sides of the bridge. On the downtown side of the canal and parallel to it are the various tracks of defendant railroad company. There are eight of these, though only four—the one nearest the canal and the three farthest from the canal—are in actual use, the others being merely "dummies" extending only across the paved portion of Hagan Avenue. The track alongside which Booth fell is about 140 feet from the near end of the bridge, so that, after crossing the bridge, it appears that he had walked approximately 135 feet before he stumbled over the obstruction on the near side of that track. For some time prior to the date of the accident the municipal authorities had been making repairs to the surface of the bridge and, though pedestrians had been permitted to cross, vehicles had been excluded, and, in order to prevent the use of the bridge by vehicles, it had been turned slightly, so that only at one corner of each end did it make contact with the adjacent bank of the canal, and these contact points were only a very few feet wide.

Taking advantage of the fact that no vehicles could cross its tracks at that point while repairs to the bridge were in progress, defendant had undertaken to make certain slight repairs to the surface of the pavement, through which its tracks extended. It had placed a barrier on the downtown side of the track, near which the accident occurred, and this barrier was about 10 feet beyond the obstruction over which plaintiff fell. The barrier consisted of a rail laid on the top of nail kegs. At night it was lighted by three switch lights—one at each end and one near the center. These lights showed red to pedestrians approaching either from the downtown or from the

140

uptown direction. A more or less accurate idea of the general situation may be obtained if the paving extending from the bridge across defendant's tracks can be visualized as a large "V", with the apex representing the bridge and the two diverging arms representing the outer edges of the pavement extending from the bridge in a downtown direction. At the end of each of the open sides of the "V" commenced the sidewalks—one on each side of Hagan Avenue; the one on the lake side being that towards which plaintiff was making his way after crossing the bridge, which, as we have said, was at the apex of the "V".

All of the tracks of defendant crossed this "V", the one near which the accident occurred being next to the last on the open side of the said "V".

Plaintiff was on his way to work, being due at midnight. He crossed the bridge in a downtown direction and then turned slightly to his left, intending to proceed to the end of the sidewalk to which we have referred. Had he followed the side of the "V" within 4 or 5, or even 7 or 8 feet, he would have safely traversed all of the tracks since it is very clear that there were no obstructions along that route. The evidence rather clearly shows that, near the bridge, there was a barrier which had been erected by the municipal authorities, though there is some dispute concerning the presence of this barrier. As plaintiff walked from the bridge—after crossing it—he noticed, and, in fact, had for about two weeks been aware of, the other barrier erected by the railroad company on the lower side of the track, near which he fell. Of course, this latter barrier was at the far side of the track and there was no other warning or barrier to prevent his coming upon that track, or to prevent his walking into the obstruction over which he says he stumbled. It appears that, though the barrier had been in position for several days at least, the surface of the roadway had not been disturbed at that point, and, therefore, though plaintiff knew that the barrier was present, he did not know that the obstruction over which he fell had been placed there during that day. The railroad company had dug a small trench on each side of that particular track and had piled the excavated earth and road material alongside the track on each side of it.

While there is strenuous denial that there was any rail laid along the top of this earth,

our brother of the district court reached the conclusion that such a rail was present, and we do not find in the record sufficient evidence to warrant the belief that, in reaching this conclusion, he was in error. We assume, therefore, that such a rail was laid along the top of the mound of earth on the near side of the said track and that this rail extended beyond the earth for several feet toward the lake side of the pavement. That he stumbled over the end of this rail seems clear. Though there is contradictory evidence as to whether there was sufficient light for a reasonably prudent person to discover the presence of the rail, our brother below found that there was not adequate light and that, therefore, plaintiff, in stumbling over the rail, was not himself guilty of contributory negligence. Again we feel that, though there may be some doubt on this point, the record does not justify the conclusion that the finding of the district judge was manifestly erroneous.

The real question, then, is whether this rail was in a position sufficiently near to the usual route which had previously and regularly been followed by plaintiff to warrant the conclusion that he was not negligent in wandering only a slight distance to his right and in not following a direct course from the bridge to the sidewalk.

On the question of the location of this particular rail over which he claims to have stumbled—and when we use the word "location" we mean with reference to its nearness to the route which plaintiff should have followed—we are much impressed, as was our brother below, by the testimony of Mr. W. E. Gipson, who, at that time, was the safety inspector of the Works Progress Administration, the employer of plaintiff. We find his statements quite clear and are particularly impressed by his testimony given at the scene of the accident. He accurately established the exact point at which the barrier was erected and, also, fixed the location of the end of the rail over which plaintiff claims he stumbled. According to Gipson's testimony, the lake side end of the barrier was 13 feet, 9 inches from the lake side edge of the pavement, and the lake side end of the rail, over which plaintiff says he stumbled, was 14 feet, 10 inches from the edge of the pavement. The sidewalk itself, toward which plaintiff was walking, was not more than 4 feet in width and it made contact with the street pavement at the open end of the "V", so

that, had plaintiff walked from the bridge toward that sidewalk, he could have wandered as much as 14 feet from the edge of the pavement without striking the obstruction, and he could have wandered as much as 13 feet, 9 inches from the edge of the pavement and then been clear of the barrier, of the presence of which he was aware and which barrier was marked on that end by a red light plainly visible to him. He seems to have been aware of the fact that he should not have wandered far from the edge of the pavement because he claims that he did not do so. At one point in his testimony he says that he was only 6 feet, 6 inches from the edge of the pavement when he fell, and at another point he states that he was but 4 feet, 8 inches from it. It is obvious that, had he been so near to the edge of the pavement, he would not have fallen, since, as we have shown from the testimony of Mr. Gipson, the rail was 14 feet, 10 inches from that edge. It is very clear, then, that he wandered at least 10 feet away from the usual route and that he did this with full knowledge of the fact that there was a warning barrier toward which he was walking and knowing also that, though no work had been in progress at that particular point, the railroad company was making general repairs to its tracks in that neighborhood.

Furthermore, we have some doubt as to whether he should not have noticed the particular obstruction over which he fell in view of the fact that there was a street light burning only 66 feet from the point at which he stumbled.

In view of all of the circumstances, without hesitation we reach the conclusion that there was negligence on the part of plaintiff himself in wandering so far from the "beaten path" in the face of obvious danger. To do so constitutes negligence.

In Yuspeh v. Mike Mitchell & Sons, 12 La.App. 397, 126 So. 277, 278, is found a case in which we discussed the care which should be exercised by a pedestrian where he is negotiating a street where repairs and improvements are being made. We said: "* * * while such works are under way, it is manifestly impossible for the streets and sidewalks to be maintained in the same safe condition in which they normally should be. When it is obvious that the streets or the sidewalks are undergoing repairs, the traveler thereon may not assume that they are as safe as they should

be ordinarily. On the contrary, he must exercise such care as is apparently required by the abnormal conditions."

Even, then, if it be conceded that defendant company was negligent in not placing adequate guards on both sides of the obstruction, it appears plain that the cause of this particular accident was not the negligence of the company in this regard, but was the contributory negligence of the plaintiff himself in failing to use care in negotiating that crossing.

In Moise v. New Orleans Public Service, Inc., et al., 19 La.App. 703, 140 So. 505, 506, this court refused to permit recovery by a plaintiff who was injured while walking on a sidewalk which had been under repair. We said: "* * * she was charged with the duty of exercising ordinary care in traversing a locality, the dangers of which were quite obvious and with which she must have been very familiar."

The rule applicable is stated by Mr. Thompson in his Commentaries on the Law of Negligence (Vol. V, p. 754, sec. 6296) as follows: "The general rule is that one is bound to travel in the *worked part* of the highway, if it is in proper condition, and that damages will not be awarded for an injury received outside of such travelled part, where the traveller has left it without sufficient cause, although within the limits of the highway. It is a good expression of this rule to say that a traveller, whether a driver, a rider, or a pedestrian, who departs from the street or the sidewalk, where he could have avoided injury, and wanders off somewhere else, assumes the risks of his experiment. So, contributory negligence will be imputed to a pedestrian, who voluntarily and unnecessarily steps from a *sidewalk* into a hole; * * *. So, if a traveller errs in judgment, taking a *side-track* upon a highway when the main-track is passable and safe, although the side-track is generally used, and is there injured, the town cannot be held liable." (Author's italicized words).

This jurisprudence, applied to the facts here, requires that we reverse the judgment, which was in favor of plaintiff.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and it is annulled, avoided and reversed, and that plaintiff's suit be and it is dismissed at his cost.

Reversed.