LANDRY, Judge.
This is one of two companion cases arising from a common automobile accident and consolidated for trial in the court below. In a single judgment, the honorable trial court dismissed the consociate cause but awarded damages in favor of plaintiff herein against the State of Louisiana from which said adverse adjudication defendant has appealed.
The clear and simple circumstances from which this litigation arises are virtually un *442 contested. The sole issue before the court concerns the legal conclusions to be drawn from mutually admitted events leading to a collision between approaching automobiles upon a public highway.
The accident in question occurred at approximately 8:00 P.M., June 23, 1960, on a tangent of paved Louisiana Highway No. 1, near the intersection of said highway and Normandy Lane, between Batchelor and Mórganza, Pointe Coupee Parish. At the point of collision the roadway consists of a concrete two-lane highway 18 feet in width coursing in a northerly-southerly direction through flat farm lands and having fairly wide grassy shoulders on both sides of its improved travel surface.
Plaintiff, Edward L. Hopkins, was driving a 1956 Dodge Pickup truck along said highway in a southerly direction at an estimated speed of 40 miles per hour and, at a point near Normandy Lane, overtook and passed a school bus traveling slowly in the same direction. After overtaking and passing the school bus plaintiff returned to the right southbound lane and immediately noted the lights of an oncoming northbound vehicle approaching in the distance. Although the approaching vehicle was traveling on its proper side of the highway with its driver in full control, plaintiff admits that he, plaintiff, “veered over to the right to give it clearance” as it was his custom in driving to afford an oncoming motorist as much of the highway as possible consistent with the safe operation of plaintiffs own vehicle. Plaintiff also concedes he was not blinded by the lights of the approaching car. Granting further that he had no intention of leaving the paved portion of the highway, plaintiff nevertheless admits that upon swerving to his right, he did not reduce his speed and inadvertently drove his truck off the paved portion of the highway where the right front wheel of his said vehicle struck a deep rut adjacent to the surfaced portion of the roadway. Upon striking the rut, plaintiff lost control of his vehicle which then deflected and crossed the highway into the opposing lane. Just as plaintiff regained control of his vehicle and was attempting to resume his proper side of the highway, plaintiff’s truck was struck in the northbound lane by the approaching vehicle, a 1957 Mercury 4-door sedan being operated by one Claiborne Baptiste. The collision resulted in damage to both vehicles and personal injuries to plaintiff.
Baptiste testified that approximately one mile from the scene of the accident, while traveling northerly at a speed of 50 to 55 miles per hour, he observed the oncoming Hopkins vehicle swerving from one side of the road to the other. Noting the unusual action of the oncoming vehicle, Baptiste slowed the speed of his vehicle, dimmed his lights in the belief that his headlights may have blinded the approaching motorist and prepared to leave the roadway and take the shoulder if necessary to avoid a collision. . (Presumably at this time plaintiff was in the act of passing the school bus which he referred to in his testimony although Baptiste’s testimony contains no reference to the presence of a third vehicle.) After observing the approaching vehicle swerve from side to side for a distance of about one-quarter mile, Baptiste then noted the vehicle return to its proper side of the highway and continue southerly in its proper lane of travel with its driver apparently in full and complete control. When the oncoming truck regained its proper side of the highway the two vehicles were then approximately one-half mile apart and Baptiste continued northerly in his proper lane of travel in the belief that all danger of an accident had passed. As the two vehicles continued their approach, each traveling in its proper lane of travel, Hopkins’ truck suddenly swerved into the northbound lane of travel and the collision ensued.
We believe it unnecessary to detail the testimony of the witnesses who deposed regarding the condition of the shoulder of the highway. It suffices to state the evi *443 •dence shows that at the point where the right front wheel of plaintiff’s truck left the pavement, immediately adjacent to the concrete slab there existed a rut approximately 100 feet in length and varying in depth from 8 to 12 inches. It further appears that in inadvertently driving his vehicle off the highway, the right front wheel of plaintiff’s truck entered this rut causing plaintiff to lose control of his vehicle with the result herein previously indicated. The record also leaves no room for doubt that this defective condition of the shoulder had existed for some months prior to the accident to the actual and constructive knowledge of defendant’s employees.
In substance plaintiff maintains defendant was negligent in permitting the continued existence of the rut immediately adjacent to the surfaced portion of the highway which dangerous, defective condition was the sole cause of plaintiff losing control of his vehicle and was therefore the sole proximate cause of the accident.
Defendant, however, maintains it was free of negligence and contends the accident resulted solely from the negligence of plaintiff in that plaintiff: (1) failed to have his vehicle under proper control; (2) negligently drove his vehicle off the traveled portion of the highway into the rut without cause and in the absence of an emergency requiring plaintiff to abandon the safe, paved surface of the road to avoid a possible accident; (3) neglected to bring his vehicle to a stop after driving same from the paved portion of the highway; (4) pulled his vehicle back onto the highway immediately in front of and into the lane of travel of the approaching vehicle driven by Baptiste; and (5) negligently and inadvertently drove his vehicle into the opposing traffic lane occupied by the approaching Baptiste automobile. In the alternative defendant alleges plaintiff’s contributory negligence in the above respects.
The evidence established beyond doubt (as found by the learned trial court) that plaintiff lost control of his vehicle immediately after the right front wheel of his truck left the concrete roadway and that the cause of said unfortunate event was the defective condition of the shoulder of the highway.
Defendant, Department of Highways, is expressly charged by law with the duty of maintenance of the public highways of this state. LSA-R.S. 48:21.
A “highway” is defined in LSA-R.S. 48:1(11) as follows:
“(11) ‘Highway’ means a public way for vehicular, mounted, and pedestrian traffic, including the entire area dedicated thereto and the bridges, culverts, structures, appurtenances, and features necessary to or associated with its purposes.”
The definition of “maintenance” as relates to public highways is contained in LSA-R.S. 48:1(13) which provides:
“(13) ‘Maintenance’ is the operation, activity, and continuing process of repairing and preserving an existing highway or any part thereof to keep it at or near its original level or standard of usefulness.”
In view of the foregoing it is clear beyond doubt that responsibility for maintenance of the highway in question herein rested upon defendant, Department of Highways.
In addition, it has been held that the “shoulders” of a highway are part of the state highway system thereby imposing upon the Department of Highways the duty and obligation of maintaining the shoulders of all roads and highways in the state system. Glover v. Town of Ponchatoula, La.App., 17 So.2d 44. We readily concur in this holding in view of the provisions of LSA-R.S. 48:1(11), LSA-R.S. 48:1(13) and LSA-R.S. 48:21.
*444 The negligence of defendant herein is manifest from the record which clearly establishes defendant’s failure to correct the defect in the highway and repair same despite actual and constructive knowledge by its employees of the aforesaid condition for a prolonged period preceding the date of the accident. Consequently the sole issue before the court is plaintiff’s alleged contributory negligence.
Our research reveals the precise situation involved in this litigation has not arisen in any reported Louisiana case. We find, however, several prior decisions which announce and establish rules regarding the use of the improved portion of our highways and the shoulders or unimproved portions thereof.
Thus, in Booth v. Louisiana & A. Ry. Co., La.App., 187 So. 138, which admittedly involved a pedestrian who, while walking at night, deviated from the main path, the Court of Appeal, Orleans (Fourth Circuit) quoted with approval the following general rule regarding highway travel, as follows :
“ * * * The general rule is that one is bound to travel in the worked part of the highway, if it is in proper condition, and that damages will not be awarded for an injury received outside of such travelled part, where the travel-ler has left it without sufficient cause, although within the limits of the highway. It is a good expression of this rule to say that a traveller, whether a driver, a rider, or a pedestrian, who departs from the street or the sidewalk, where he could have avoided injury, and wanders off somewhere else, assumes the risks of his experiment. * * * » (Emphasis by the Court.)
A bus driver operating his vehicle prudently and cautiously, but who nevertheless slipped off the road into a ditch when compelled to drive near the edge to avoid two gravel and dirt ridges left by a road machine in the center of the highway, was; held free of negligence in Karp v. Powers, 12 La.App. 518, 124 So. 781.
In two cases the courts have apparently-sanctioned the use of the shoulder of a highway to avoid an accident, but found! the driver negligent in the method employed! in attempting to regain the pavement. The-following quotation explains the circumstances found by the court in Scarborough v. St. Paul Mercury Indemnity Co., La.App., 11 So.2d 52.
“ * * * going at forty-five miles-an hour, as he was, it may well be that, he became faced with a situation of peril and emergency and had to do-something on the spur of the moment to avoid an accident. But as we understand their testimony, even conceding-that there was more than one vehicle approaching them, the only one that left its side of the road at all never-swerved more than two feet across the-center stripe in the pavement. At that time, the Scarborough car was anywhere from one hundred and twenty-five feet to half a city block away, at which distance, had Mr. Scarborough had his car under proper control and been driving carefully, he should have been able to use his side of the road', including the shoulder, to better advantage then (sic) he did in meeting-this situation. Instead, without much reflection, as it seems to us, he pulled-over to his right on the shoulder of the road and when he felt the car careening as it was going down the bank, he jerked it back to his left in an effort to drive back to the highway and that is when it turned over. * * * ”
Muse v. Chambley, La.App., 16 So.2d 276, involved events necessitating the court’s-making a finding upon conflicting evidence regarding whether a driver was compelled to go upon a shoulder by an oncoming truck, the evidence revealing that the driver did. not lose control of his vehicle until he at *445 tempted to return to the pavement without first reducing his speed. The court found that the driver involved “had ample time and opportunity after getting on the shoulder to have reduced his speed and brought his car under such control that the accident would not have happened.” It is significant that although both of the cited cases are distinguishable from the case at bar considering present plaintiff had no opportunity to regain control of his vehicle, the courts tacitly recognized the necessity of the motorist leaving the pavement because of an emergency not of his own making.
We cite with approbation the following authorities pertinent to the issue before us:
40 C.J.S. 297 verbo Highways § 255b:
“The shoulders of a highway are an integral part thereof and should be maintained in a reasonably safe condition, and in the case of highways under the state’s control the shoulders may also be regarded as under its control so as to impose liability on it for damage from defects in the shoulder rendering it unsuitable for such use as may reasonably be contemplated for that portion of the highway. The shoulders of a highway are not, however, ordinarily regarded as a part of the traveled portion within the contemplation of the law imposing duty of maintenance and liability for damage from defects, and where a highway authority paves and curbs a highway to a reasonable width it thereby clearly designates that as the portion to be used for vehicular traffic, and a macadamized shoulder is obviously not intended for vehicular traffic in the same way but for use merely for parking or emergency, so that the highway authority is not liable to one injured by an obstruction while driving along the shoulder of the road. * * * Where, however, the state has assumed the duty of construction and maintenance in respect of shoulders, it may be held responsible for damages resulting from defects.” (Emphasis added.)
5A Blashfield’s Cyclopedia of Automobile Law and Practice 228, Part 17, Chapter 90, § 3205:
“§ 3205. Maintaining All Parts of Highway
“Although it often has been held that neither a state nor a municipality is obliged to keep all parts of a highway open to travel and in a reasonably safe condition, it also has been held that under some circumstances such duty may extend to the full width of the highway or street. It would seem that if it is foreseeable that there may be travel off the beaten path, the improper maintenance of areas adjacent to the usually traveled portions of the street or highway, may constitute negligence. Thus, while a shoulder of a highway may not be made to be traveled upon, there may be a duty to maintain it in such a condition that it is safe for emergency use.
******
“A municipality is not responsible for any injury sustained by a traveler on, account of a defect or obstruction within the limits of a highway, but not in the traveled part, or so connected with it as to affect the safety and convenience of those using the traveled way. * * *»
The following is of further interest.
5A Blashfield’s Cyclopedia of Automobile-Law and Practice 230, n. 80.5:
“In New York it has been held that although the shoulder is technically part of the road, it is not constructed as a place on which to travel, and ordinarily, irregularities in the surface of the highway shoulder are not a menace to the traveling public for which the state is liable. However, if the shoulder is unsafe for emergency use, due to improper maintenance, the *446 state may be liable. Gilbert v. State, Ct.Cl., 56 N.Y.S.2d 232.
******
“And where the shoulder is constructed and maintained for use by traffic, it must be kept in a safe condition. (Cases cited.) * * * ”
While the foregoing cited authorities represent the common law rule and are not, therefore, binding upon the courts of this state, they do represent what appears to be the general rule and seem to be founded upon sound principles. Consequently we adopt same as our own views.
Demby v. Plischke, La.App., 38 So.2d 266, is more nearly synonymous with the case at bar than any of the authorities here-inabove cited. In the Demby case the driver of a pickup truck left the paved portion of the highway because an approaching car drove into his lane of travel while overtaking and passing another car going in the same direction as the overtaking motorist. The court found, however, that the driver leaving the highway was needlessly alarmed because the passing maneuver of the oncoming vehicle was made at a time and distance which should have caused defendant no concern in that it could have been completed by the overtaking driver without incident. In finding the defendant driver guilty of negligence in leaving the highway the court observed:
“ * * * the collision resulted from the negligence of Plischke, driver of the pick-up truck, when he, without slackening his speed, unnecessarily drove the truck onto the shoulder of the highway, lost control and veered the vehicle back into the highway across the center line of the highway into its own left side, where it struck the Oldsmobile.”
It is of the utmost significance and importance in the instant case that plaintiff does not claim his driving off the paved portion of the highway was in any way necessitated by an emergency created by the oncoming Baptiste automobile. Nor does appellee maintain the improved driving surface of the roadway was in any way defective or unsafe. On the other hand, ap-pellee frankly conceded: “It was the right side of the road, and I got over as far as I could, I mean, I like to give another vehicle plenty of clearance.” At another point in his testimony, plaintiff readily admitted he had no intention of driving off the pavement.
We hold that in the absence of an emergency over which a motorist has no control and which is not of his own creation, it constitutes negligence for a driver to permit his vehicle to leave the improved portion of a road or highway without reducing his speed and otherwise taking precautions to insure his retention of control thereof in the event he should encounter some unforeseen defect on the shoulder of the thoroughfare. In the case at bar had appellee kept his vehicle on the admittedly safe concrete slab, the meeting and passing of the approaching vehicles would have transpired without incident. Except for appellee’s inadvertence in allowing his automobile to leave that portion of the highway improved and dedicated to vehicular traffic, the accident giving rise to this litigation would never have occurred. Appellee’s negligence in this respect was clearly a proximate cause of the accident and bars his recovery on the ground of contributory negligence as alleged and established by appellant.
For the reasons hereinabove set forth it is ordered, adjudged and decreed the judgment of the trial court in favor of plaintiff, Edward L. Hopkins, and against defendant, State of Louisiana, through the Department of Highways, be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of appellant, State of Louisiana, through the Department of Highways, and against plaintiff, Edward L. Hopkins, dismissing and rejecting said plaintiff’s demands at plaintiff’s cost.
Reversed and rendered.