LOTTINGER, Judge.
This is an automobile accident case wherein the Trial Court found in favor of the defendants and against the plaintiffs. The plaintiffs have appealed.
The Trial Judge rendered very well written reasons for judgment, which we now adopt as the opinion of this Court.
“An automobile accident which occurred on April 16, 1969, at the intersection of Sherwood Forest Boulevard and Harrel’s Ferry Road has precipitated this suit for damages brought by Georgia W. Weber and Emile M. Weber for injuries received in the accident. Also joining in the suit is Kenneth Weber, who seeks damages for the loss of his 1967 Oldsmobile automobile which was destroyed in the collision. Originally named as defendants were T. L. James and Company, Inc., who was constructing a section of the Interstate Highway in the vicinity. The Aetna Casualty & Surety Company, the contractor’s insurer, the State of Louisiana, through the Department of Highways, Betty Cantu, the driver of the other vehicle involved, and her insurer, the Allstate Insurance Company. The latter two defendants were dismissed from the action on rule because of the plaintiffs’ failure to answer interrogatories propounded to them. Therefore, the suit remains only as to T. L. James and Company, its insurer and the State of Louisiana.
The plaintiffs contend that the defendants are liable because of their failure to properly maintain the approaches to .the intersection, in failing to properly mark the intersection, and for improper design. Of course, as to the last contention, it is obvious that if there is fault in that respect, liability will rest solely on the part of the Department of Highways since the design of the intersection was purely under its control and direction. However, it is apparent from the evidence introduced that the gravaman of plaintiffs’ complaint is devoted to alleged lack of maintenance and failure to properly mark the intersection.
The evidence and stipulation of counsel show that the accident happened about 11:25 A.M. at the aforementioned intersection when an automobile driven by Betty Cantu, which was headed in an easterly direction on Harrell’s Ferry Road, collided with a 1967 Oldsmobile owned by Kenneth Weber and operated by Emile Weber who was proceeding in a northerly direction on Sherwood Forest Boulevard. Weber’s wife, Mrs. Georgia Weber, was riding in the right front seat of the Weber automobile. Sherwood Forest Boulevard in this area is a four lane concrete street running in a northerly and southerly direction. Harrell’s Ferry Road is a two lane asphalt road running generally in an east-west direction. At the time of the accident, Harrell’s Ferry Road had the right-of-way and there were stop signs posted on the corners and in the median strip controlling traffic on Sherwood Forest Boulevard. The evidence presented reflects that in April of 1969, the Baton Rouge to Hammond segment of 1-12 was in the process of being completed just south of the Sherwood Forest-Harrell’s *610 Ferry Road intersection. T. L. James and Company was building this phase of the Interstate under a contract with the Department of Highways. Previous to the construction of the project, Harrell’s Ferry Road was a principal east-west ■ thoroughfare in the eastern part of the Parish of East Baton Rouge. It was left open after the construction of the Interstate was begun in order to provide access for through traffic. In the early part of April, 1969, the contractor notified the Department of Highways of their intention to close Harrell’s Ferry Road in order that the portion of the Interstate east of the Intersection could be completed. This was eventually done and about the 1st of May following the date of the accident, the stop signs were reversed giving Sherwood Forest the priority.
The testimony submitted on the trial of the case reflects that prior to the occurrence of the accident Weber was headed in a northerly direction at a reduced speed and intended to turn around in order to retrace his path back to the Airline Highway from whence he had come. He testified he was unfamiliar with the area and was not cognizant of the fact that Harrell’s Ferry Road intersected Sherwood Forest Boulevard at this point. He acknowledged seeing the sign shown in the photograph listed as Exhibit James #1 (marked as “B”) in the median strip, but declared that he did not realize it was a stop sign controlling traffic on Sherwood Forest Boulevard until too late. The state trooper who investigated the accident testified that Weber told him following the collision that he had seen the stop sign, but not in sufficient time in order to stop on the wet pavement and avoid the accident.
The evidence shows, and it is not seriously contested, that the contractor prior to actual construction had placed barricades and warning signs a short distance south of the project on Sherwood Forest Boulevard showing that construction was underway ahead and that the speed limit was established at twenty miles per hour due to the construction activity. The plaintiffs contend, however, that there were no signs proclaiming the fact that there was a stop ahead. They say that in view of the existence of the curve and the high grass growing in the area, the intersection was obscured preventing Mr. Weber from being aware that a stop was indicated and consequently the defendants were negligent in not posting such a warning. From a personal observation of the area, the Court agrees with the plaintiffs that the curve is more pronounced when viewed by an approaching motorist on the scene than is shown by the photographs offered in evidence. However, the Court cannot agree with their contention insofar as the height of the grass growing along Sherwood Forest Boulevard at the time. Weber testified that the grass was four to six feet high and submitted photographs in support of his contention (Exhibits P-1 thru P-5) which were taken a few weeks following the accident. It is true that from the position of the camera from which these photographs were taken the grass does appear to be several feet high, but the best evidence that it was not much more than a foot high is the fact that the bottom of the sign board located in the middle of the median strip as shown in Exhibit P-1 and which describes the direction of Eastgate Subdivision is easily recognizable above the top of the grass although the bottom of the board is only located two or three feet above ground level. Further, the stop sign located in the median strip (which had already been removed before these photographs were taken) was substantially higher than the Eastgate sign. This is evidenced by the photograph identified as Exhibit-James #1. Most of the witnesses who testified said that the photographs marked Exhibit-James #1 and #2 taken immediately following the accident correctly reflected the scene and existing conditions at the time they were taken. Accordingly, the Court finds that there was no failure on either the part of the contractor or the State to properly maintain the grass and approaches to the intersection.
*611 The plaintiffs argue, however, that under the provisions of the Highway Department’s regulatory manual prescribing the placing of signs (Exhibit P-14), the Department was required to place signs warning of a stop ahead in rural areas where the view of the intersection is obscured. As argued by the plaintiffs, this is a recommended procedure where it is determined that under the conditions and circumstances prevailing at that location indicate the need for such a sign. The Court agrees that where a four lane highway permitting elevated speeds is required to yield to a two lane road where the intersection is not clearly visible, signs proclaiming the existence of a stop ahead should be dictated under the normal conditions. However, under the situation as it existed at the time of the accident, where signs were erected warning the motorist of construction activity ahead and requiring him to maintain a speed of not more than twenty miles per hour, it would appear it would be unreasonable to insist that such signs be placed. Certainly, it would be desirable, but the Court cannot and does not hold that the failure to erect these signs was negligence under the circumstances. In this regard, the courts have held that the Department of Highways has properly discharged the duty required of it where it erected a standard stop sign. DeGregory v. State Department of Highways, La. App., 192 So.2d 834, 1st Cir. (1966). While the Court is sympathetic to the position espoused by the plaintiffs, as well as for the injuries which they received, it is apparent that the cause in fact of the accident was the failure of Mr. Weber to observe the stop sign in time to bring his vehicle to the required stop. As stated here-tobefore he made this statement to the investigating officer.
For the reasons assigned, judgment is rendered in favor of the defendants, T. L. James and Company, the Aetna Casualty & Surety Company, Inc., and the State of Louisiana, through the Department of Highways, and against the plaintiffs, Georgia W. Weber, Emile M. Weber and Kenneth Weber, dismissing their suit at their costs. The expert witness fee of Dr. Alvin Stander is set at $100.00 and is taxed as costs.”
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed. All costs of this appeal are to be paid by plaintiff-appellants.
Judgment affirmed.