BLANCHE, Judge.
These two consolidated suits arose out of an automobile accident which resulted in the death of Lawson L. Edwards, minor son of Harold S. Edwards and Virginia Edwards, plaintiffs herein. The accident occurred on May 17, 1968, at approximately 2:00 A.M. in the Parish of Tangipahoa, Louisiana, on U.S. Highway 190 where the Department of Highways, through its contractor, was replacing a bridge across the Tangipahoa River and had constructed a temporary detour bridge. Lawson Edwards, with his guest passenger, Bobby Mclnnis, was traveling west from Coving-ton toward Hammond, had crossed the temporary bridge and was proceeding off the detour and back onto the main highway when the automobile he was driving failed to negotiate the curve and struck the bridge abutment on the left side of the roadway.
In appellate Suit No. 9060 plaintiffs, Harold S. Edwards and Virginia Edwards, individually and as administrators of the estate of their minor son, sued the Department of Highways, State of Louisiana; its contractor, Lee A. Holland, Ruby H. Holland and W. R. Aldrich and Company; and the contractor’s liability insurer, National Surety Corporation, for damages sustained by them as a result of the accident. In appellate Suit No. 9061 plaintiff, Emmco Insurance Company, the collision insurer of the car driven by Lawson Edwards and owned by Mrs. Eula Lee Mc-lnnis, claimed by subrogation the amount paid to Mrs. Mclnnis under their policy of insurance. In this suit Mrs. Mclnnis also sued to recover her $50 deductible. The *674 same parties were made defendants in both suits. Although Associated Transport Company of Texas, Inc., was also named as a defendant, the suits were compromised prior to trial as to this defendant.
In regard to the alleged negligence of the Department of Highways, the thrust of plaintiffs’ case was based on three counts, that the Department (1) failed to maintain warning signals in the proper positions at the detour, (2) did not maintain the detour in a safe condition, and (3) participated in designing and creating a “death trap” in a well-traveled section of the highway. Alternatively, the contractor was also alleged to be negligent in the same respects.
Defendants in both suits answered, generally denying plaintiffs’ allegations, contending that the sole cause of the accident was the negligence of Lawson L. Edwards and alternatively pleading contributory negligence on his part.
The trial court took the matter under advisement after the trial thereof and subsequently rendered judgment in Suit No. 9060 for plaintiffs, Harold S. Edwards and Virginia Edwards, against the defendant, Department of Highways, State of Louisiana, in the sum of $30,000 to each plaintiff plus the sum of $943 for funeral expenses. In Suit No. 9061 judgment was rendered in favor of plaintiff, Emmco Insurance Company, against defendant, Department of Highways, State of Louisiana, in the sum of $2,570.40, and further in favor of plaintiff, Mrs. Eula Lee Mclnnis, for $50 against said defendant. In both suits plaintiffs’ claims against Lee A. Holland, Ruby H. Holland, W. R. Aldrich and Company and National Surety Corporation were dismissed. From these judgments, the defendant, Department of Highways, has appealed. We reverse.
Defendant, Department of Highways, contends that the trial court erred (1) in finding the Department of Highways negligent, (2) in finding that the proximate cause of the accident and death of Lawson Edwards was the design of the detour in question, (3) alternatively in failing to find Lawson Edwards contributorily negligent, and (4) alternatively in awarding to plaintiffs amounts in excess of those supported by the jurisprudence.
In his Written Reasons for Judgment, the trial judge stated as follows :
“The Court is convinced beyond any doubt that the proximate cause of the accident and resulting death of Lawson Edwards was the design of the detour in the project involved in this litigation. The testimony established that this was a most dangerous detour constructed at a location and in a manner which created a most hazardous situation, a hazard too severe to be contemplated by the average traveling motorist.” (Written Reasons for Judgment, Record, p. 253)
These cases are disposed of by our finding that plaintiffs failed to prove by a preponderance of the evidence that the cause of the accident was the faulty design of the highway detour by the Department of Highways. The charge of defective design or “death trap” as a cause in fact of the accident came about as a result of the testimony of Bobby Mclnnis, the only passenger in the vehicle, who was “propped up” on the back seat.
Mclnnis testified that just before the vehicle crashed into the bridge abutment, he heard Lawson Edwards exclaim “Oh My God” and with this exclamation he “came up from the back seat * * * and there was a pair of lights, headlight[s], that looked like they were going to go through us or over us or hit us or something like this and there was the crash.”
To explain the emergency of another vehicle on Edwards’ side of the road, the plaintiffs sought to show that the accident was the result of the faulty design of the highway detour rather than the negligence of the driver of such vehicle. This showing came primarily from lay witnesses who testified that as they were proceeding westerly through the detour (the same *675 direction in which Edwards was proceeding) and met an eastbound vehicle turning into the west end of the detour they would be required to slow or stop their vehicle at that point because of the threat of encroachment of the eastbound vehicle on their side of the road. No other vehicle was found at the scene of the accident. Sergeant Charles E. Chandler of the Louisiana State Police speculated that if another vehicle had been on Edwards’ side of the road that, because of the sharp curve which the detour makes in order to reenter the highway and the direction of travel of the Edwards’ vehicle across the opposite lane, a collision should have occurred between the vehicles. The other investigating officer likewise did not find any evidence of another vehicle at the scene of the accident. Additionally, Edwards left 81 feet of skid marks which went in a straight line from Edwards’ lane of travel across the opposite lane of travel to the place where the car came to rest against the bridge abutment. It is doubtful, with his wheels locked in a skid, whether Edwards would have been able to make a maneuver to avoid another vehicle. Only Bobby Mclnnis’ testimony places another vehicle at the scene and his condition was described by Angela Howes Brady, Edwards’ date for that evening whom they had just taken home, as being “not very sober.”[1] Thus, the proof of another vehicle on Edwards’ side of the road hinges solely on the testimony of Mclnnis which we do not regard as persuasive. However, the case need not be decided on Mclnnis’ credibility because even if there were a vehicle on Edwards’ side of the road, there is no proof that it was there as a result of the faulty design of the detour.
The preponderance of the evidence is overwhelming to the effect that vehicles could safely negotiate the entrance to the detour without encroaching over the center line if the posted speed limit were obeyed. Webster’s Seventh New Collegiate Dictionary defines “detour” as “a roundabout way temporarily replacing part of a route.” The detour was a temporary construction and was not designed to be traveled at normal highway speed. To the contrary, it was designed to be traveled at greatly reduced speed and with caution. The detour was not dangerous per se. It would have only been dangerous without proper warning signs advising the traveling public of their approach to a temporary detour and further warning motorists of the speed limit of twenty miles per hour which was expected to be maintained while traveling on said detour.
Though not the case here, it may be that a detour route could be designed and constructed so that an accident thereon would be inevitable despite all safety precautions. However, where the route as constructed here is safe for travel within the posted speed limits and there has been adequate warning of the approach to such a detour and the speed at which it is to be traveled, then the Department of Highways has fully discharged its duty to the traveling public.
The general rule concerning the duty of care owed by highway authorities is stated in 60 C.J.S. Motor Vehicles § 192:
“The exercise of reasonable care by highway authorities toward motorists may require a placing of signs warning of dangerous conditions, especially where the situation is inherently dangerous, as where there are obstructions or excavations in the way, or the highway terminates abruptly, or there are dangerous curves in the highway, or a bridge has been destroyed, and also where specifically required by statute.
*676 jIj ijs % s¡* *
“No hard-and-fast rule can be laid down as to the type of warning which should be given other than that the warning should be of a size and nature commensurate with the danger ahead, and they should be reasonably adequate for the intended purpose. In determining what is reasonable warning, the place at which the danger exists, the nature of the road, and the general situation and circumstances surrounding it are to be taken into consideration, as are also the kind of travel and the speed at which vehicles will probably travel on the road.”
The foregoing quotations have been quoted in Christ v. State, Department of Highways, 161 So.2d 322 (La.App. 3rd Cir. 1964), writ refused, 246 La. 82, 163 So.2d 358; Dowden v. State, 81 So.2d 48 (La. App. 2nd Cir. 1955); Reeves v. State, 80 So.2d 206 (La.App. 2nd Cir. 1955), rehearing denied, 228 La. 653, 83 So.2d 889 (1955).
Here there were warning signs from both directions as a driver approached the detour bridge. These signs warned the traveling public that there was a detour ahead and of the posted speed limit for travel on the detour. The photographs offered in evidence by the Highway Department depict this fact. Highway-1 shows a sign “ROAD CONSTRUCTION 1500 FT”; Highway-2 shows a sign “DETOUR 1000 FT”; Highway-3 shows a sign “DETOUR 500 FT”; and Highway-4 shows a well-marked barricade with directional arrows and a speed limit sign stating “SPEED LIMIT 20.” After entering the detour, there were further directional arrows and speed limit signs showing the speed limit as twenty miles per hour. It cannot be disputed that these signs were adequate to warn the public of the detour and the speed at which vehicles were to travel.
The testimony revealed that Edwards was familiar with the detour, as he had traveled it before. On the night of the accident he had passed all of the warning signs referred to hereinabove, and despite the speed limit warning of twenty miles an hour, evidence elicited from plaintiffs’ own expert, Lieutenant Elman F. Randolph, Jr., showed that he 'was traveling at a speed of 47 miles per hour or nearly two times the posted speed limit at the time of the accident.
Plaintiffs’ own expert also estimated that the curve at the detour could have been executed successfully at 32 miles per hour. The lay witnesses called by plaintiffs who testified to the difficulties experienced by them at the detour exit did not explain whether the vehicles that crossed over the center line were traveling within the speed limit. Even if they were traveling within the speed limit, the most logical explanation came from Robert L. Edwards, uncle of Lawson L. Edwards, when he stated that on the occasion of his visit to the scene of the accident with a photographer the cars that were not able to stay in their proper lane of travel “were not able to negotiate that turn in their proper lane due to either excessive speed or just plain negligence.” However, the record is clear that even the largest vehicles could negotiate this detour and remain in their lane of travel if they were driving properly and within the speed limit. Investigating officers Sergeant Chandler and Sergeant Adams so testified, and also to the same effect is the testimony of Mr. Victor Rags-dale, the Aldrich project superintendent, and Mr. Robert Cooper, the Highway Department’s project engineer, who actually observed traffic including large tandem trucks and trailers negotiating the turn into the detour at approximately the posted speed limit of twenty miles per hour.
JUDGMENT IN NO. 9060
For the above and foregoing reasons, the judgment of the trial court in No. 9060 is reversed and set aside, and judgment is *677 rendered dismissing plaintiffs’ suit in said case at plaintiffs’ cost.
Reversed and rendered.
JUDGMENT IN NO. 9061
For the above and foregoing reasons, the judgment appealed from herein is reversed and set aside, and judgment is rendered dismissing plaintiffs’ suit herein at plaintiffs’ cost.
Reversed and rendered.

. Mclnnis denied that lie was intoxicated. However, Mclnnis, Edwards and Angela Howes Brady had been together since early that afternoon at a fish fry and fishing party where beer and whiskey had been served. There was no evidence that Edwards had too much to drink.