337 So.2d 257 (1976)
Willie James NORRIS et al., Plaintiffs-Appellants,
v.
STATE of Louisiana et al., Defendants-Appellees.
No. 5526.
Court of Appeal of Louisiana, Third Circuit.
August 26, 1976.
Rehearing Denied September 20, 1976.
*258 Bolen, Halcomb, Bolton & Erwin, by Gregory S. Erwin, Alexandria, for plaintiffs-appellants.
William J. Doran, Jr., D. Ross Banister, Wm. W. Irwin, Jr., Jerry F. Davis, Johnie E. Branch, Jr., by Wm. J. Doran, Jr., Baton Rouge, for defendants-appellees.
Before MILLER, DOMENGEAUX and PAVY, JJ.
DOMENGEAUX, Judge.
Several personal injury and wrongful death claims were consolidated for trial. We adopt the trial judge's written reasons concerning the consolidation and factual situations relative thereto as follows:
"These four consolidated lawsuits result from a one-car accident which occurred on October 7, 1973, at approximately 2:30 A.M. on Louisiana Highway 498 (England Drive), a two-lane highway in Rapides Parish, Louisiana, at a point 1.1 miles west of its intersection with U.S. Highway 71 (MacArthur Drive).
The accident occurred when a 1967 Chevrolet owned by Ray Donald Harris, and driven by Raymond DeCosta, was proceeding in a southeasterly direction and failed to negotiate "Cooper's Curve". The automobile travelled across the opposite lane and into a roadside ditch. It continued in the ditch 79 feet two inches, coming to rest against a large hackberry tree. The occupants of the car were: Ruther Mae Norris Roberts, aged 20, seated in the left rear; Diane Norris, 19, seated in the right rear; Ray Donald Harris, 19, seated in the center rear; Betty Lucas, 18, seated in the front passenger seat; and Raymond DeCosta, who was driving. DeCosta was killed on impact. Ruther Mae died 5 days after the accident and Diane died 20 days after the accident. Harris and Miss Lucas sustained injuries.
As a result of the accident, the following four lawsuits were filed.
In Suit Number 91,879, captioned Willie James Norris, et al. v. State of Louisiana, et al., Willie Norris, the father of Ruther Mae, having been appointed tutor of Ruther's child Jamie (2½ years old at the time of the accident) seeks damages on behalf of Jamie, for the loss of his mother, and on behalf of himself and his wife, Louella Norris, for the loss of their daughter Diane. Norris charged the Department of Highways with negligence regarding the maintenance of Highway 498. The Department answered that the accident and resulting injuries were caused solely by DeCosta, and in the alternative, if the Department was negligent, that Diane and Ruther Mae were contributorily negligent. Stonewall Insurance Company, insurer of the Harris vehicle, intervened claiming that if it is cast for uninsured motorist coverage, the company is entitled to be reimbursed by preference, providing the plaintiffs recover. . . ."
The remaining three suits, brought by Norris, Betty S. Lucas (passenger), and Donald Harris (owner) against Stonewall Insurance Company, the liability insurer of the latter, were tried with the above described actions but were not appealed, and we do not concern ourselves with those facets of this litigation.
The District Judge found in suits 91,879 and 89,730 (Norris v. Stonewall) that the sole cause of the accident was the negligence of the driver, Decosta, and the owner *259 of the vehicle, Harris. The trial judge cast Stonewall Insurance Company in judgment for the total amount of its policy, the proceeds of which were distributed pro-rata among the parties. The State of Louisiana, through the Department of Highways was absolved from liability.
The sole issue presented by this appeal is whether the Highway Department was negligent in its construction and maintenance of La. 498 at the scene of the accident, which is known as "Cooper's Curve".
Louisiana Highway 498, at the time of the accident, was a two-lane, blacktopped highway, traversing a portion of Rapides Parish. The width of the roadway at the point of the accident was 20 feet 2 inches, and there was a large hackberry tree approximately 9 feet three inches from the edge of the roadway. The curvature of La. 498 at Cooper's Curve is 13 degrees, 45 minutes. There was a curve sign with a 25 mile per hour advisory plate attached thereto approximately 484 feet from the beginning of the curve. The posted speed limit on La. 498, which is a quasi-residential area, was 45 miles per hour.
The last visible speed limit sign before entering Cooper's Curve was approximately 2300 feet from the beginning of the curve. There were no curve delineators present in Cooper's Curve on the date of the accident, and there was no center striping in the road since it had been resurfaced shortly before the accident. Several experts testified that the critical speed of the curve ranged from 65.8 miles per hour to 67.3 miles per hour. Louisiana 498 contains six to seven curves within an area of about four miles.
On the night of the accident, October 7, 1973, Decosta and Harris, who were Airmen stationed at England Air Force Base in Alexandria, Louisiana, had dates with the two Norris sisters. They attended a dance at the NCO Club at the Air Base until approximately 2 A.M. Betty Lucas, who was also at the dance, requested a ride home in the Harris vehicle. She rode in the right front seat while Decosta drove. Diane and Ruther Mae Norris, and Ray Donald Harris were situated in the rear seat. Betty Lucas testified that Decosta was driving the vehicle at a rapid rate of speed on La. 498 as the individuals left the base. Apparently there was some discussion about racing between Harris and Decosta, and at one point Harris told Decosta to "hit it, man". Decosta complied and increased the speed of the automobile considerably as the vehicle approached Cooper's Curve. Miss Lucas began screaming and pleading with Decosta to slow down, but when the driver ignored her she got down on the floor of the vehicle. The automobile left the surface of La. 498 as it entered Cooper's Curve and travelled approximately 79 feet down a ditch and struck a large hackberry tree. The collision virtually demolished the vehicle.
At the trial, Betty Lucas was unable to estimate the speed of the Harris automobile prior to its exit from the roadway, but on the night of the accident she told an investigating officer that the speedometer registered 80 miles per hour before Decosta increased his speed pursuant to Harris' suggestion. Mr. Joseph Barnwell, a professor of mechanical engineering who testified for the plaintiff, estimated that the Harris automobile was travelling at a speed of approximately 50 to 60 miles per hour when it struck the hackberry tree. There were no skid marks on La. 498 at the scene of the accident.
Plaintiffs contend that Cooper's Curve on La. 498 was inherently dangerous to motorists for two reasons. First they submit that Cooper's Curve was improperly constructed and that the signs and markers at the site necessary to warn the average motorist were either inadequate or completely nonexistent. Secondly, plaintiffs argue that the hackberry tree situated approximately 9½ feet from the edge of the road surface represented a hazard to any motorist forced to leave the highway.
The record in this case contains volumes of expert testimony and exhibits relative to the standards of construction and maintenance applicable to a state highway such as *260 La. 498. Several of the plaintiff's expert witnesses testified that there were numerous defects present in Cooper's Curve. They contend that the curvature of La. 498 at that point was excessive and that an effort should have been made to reduce the degree of curvature to approximately 6 degrees. There is testimony that reflective curve delineators and a center striping would have made the curve less hazardous. Additionally the plaintiff's witnesses were of the opinion that a right turn sign rather than a curve sign should have been employed at the location and that said sign should have been placed no less than 750 feet from the initial point of the curve.
The Highway Department maintained the position that while the curve did not present an ideal situation, it was adequately designed and maintained and was not inherently dangerous. The Department also contended that the curve sign and advisory speed plate were sufficient to alert motorists of the condition which lay ahead. Additionally, the Highway Department's expert witness, Dr. Olin K. Dart, Jr., a professor of Civil Engineering, testified that in his opinion the primary cause of the October 7, 1973, accident was the excessive speed of the Harris vehicle.
The Department of Highways is not the guarantor of the safety of all travelers on state highways nor is it the insurer against all injuries and damages which may result from defects or obstructions thereon. Wilkinson v. American Insurance Company of Newark, New Jersey, 311 So.2d 584 (La.App. 3rd Cir. 1975); Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3rd Cir. 1975), writ denied 312 So.2d 340 (La.); Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3rd Cir. 1974), writ denied 303 So.2d 182 (La.).
The duty of the Department of Highways has been most recently stated by this court in the case of Doucet v. State, Department of Highways, supra:
"The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver . .". (Emphasis added) (Citations omitted).
See also Von Cannon v. State, Department of Highways, 306 So.2d 437 (La.App. 3rd Cir. 1975), writs refused 309 So.2d 681 (La.), and numerous cases cited therein.
Also pertinent is the recent Supreme Court case of Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975), in which the court stated:
"There is no fixed rule for determining what is a dangerous defect in a public way; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question: Was the public way maintained in a reasonably safe condition for persons exercising ordinary care and prudence?" (Citations omitted)
The Highway Department is only required to warn motorists of unusual or perilous hazards in the road. See Wall v. American Employers Insurance Company, 215 So.2d 913 (La.App. 1st Cir. 1968), writ refused 253 La. 325, 217 So.2d 415; Muse v. W. H. Patterson & Company, 182 So.2d 665 (La.App. 1st Cir. 1965); and Rosier v. State, 50 So.2d 31 (La.App. 2nd Cir. 1951).
In his written reasons for judgment the trial judge stated:
"Viewing the evidence of this very tragic occurrence as a whole the court finds that the cause in fact of the accident was the grossly reckless and wanton conduct of Decosta encouraged and joined in by Harris.
The court finds that the Department of Highways did not abrogate its duty. The road and curve were adequately signed and maintained for the average prudent driver. ..."
We find a reasonable basis in the evidence to support the trial judge's conclusion *261 that the 25 mile an hour curve sign some 500 feet prior to the curve in a 45 mile per hour speed zone did not constitute a condition which was "patently or obviously dangerous to a reasonably, careful, and ordinarily prudent driver". See Doucet v. State, Department of Highways, supra; Canter v. Koehring, 283 So.2d 716 (La.1973).
We also find the case at hand factually distinguishable from that of Vervik v. State, Department of Highways, 302 So.2d 895 (La.1974). In Vervik the curve in question was located in an area which lacked both speed limit signs and a curve sign. In addition, the plaintiff in Vervik was shown to be travelling at a very reasonable rate of speed. Although the curve in Vervik also lacked a center line and delineators, the court stated in finding a breach of the Highway Department's duty, that:
"The absence of the sign was the legal cause of the accident and the damage resulting from the accident." (Emphasis added).
In the instant litigation there was a clear existence of both a speed limit sign and curve indicator with an advisory speed plate. Additionally, the evidence indisputably indicates that the vehicle was travelling at a highly excessive rate of speed.
There are several cases in the jurisprudence where the courts have found that, although there was room for improvement in the road conditions and signing on certain road, the efforts of the Highway Department were adequate to discharge its duty to the motoring public. See Roberts v. Winston Carriers, Inc., 304 So.2d 818 (La.App. 3rd Cir. 1974), writ refused 309 So.2d 341 (La.); Weber v. T. L. James & Company, Inc., 271 So.2d 608 (La.App. 1st Cir. 1972); Edwards v. State, Department of Highways, 271 So.2d 672 (La.App. 1st Cir. 1972), writ denied 274 So.2d 391 (La.); Travelers Insurance Company v. Ragan, 202 So.2d 302 (La.App. 1st Cir. 1967).
Failure to comply with the requirements of the Highway Department's manuals does not constitute negligence per se. Harkins v. State, Department of Highways, 247 So.2d 644 (La.App. 3rd Cir. 1971), writ denied 259 La. 741, 252 So.2d 449.
Regarding the hackberry tree situated 9 feet 3 inches from the edge of La. 498, the trial judge found that, relying upon the cases of Booth v. Louisiana and A. Ry. Co., 187 So. 138 (La.App.Orl.1939), and Hopkins v. State, Department of Highways, 167 So.2d 441 (La.App. 1st Cir. 1964), writ refused 246 La. 885, 168 So.2d 268, said tree presented no hazard to the driver exercising a reasonable degree of care. While we find the above cited cases inapplicable to the situation presented by this litigation, we are of the opinion that the evidence supports a finding that the hackberry tree was not an obstacle which was patently dangerous to an ordinarily reasonable and prudent driver.
Thus, viewing the evidence as a whole we find a reasonable basis therein to support the trial judge's finding that the conditions present on La. 498 (Cooper's Curve) on October 7, 1973, did not constitute a breach of the duty owed to the motoring public by the Department of Highways.
For the above and foregoing reasons the judgment of the district court is affirmed. Costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.
PAVY, J., concurs.