COLE, Judge.
This is a wrongful death and survival action brought by the surviving spouse and two children of the decedent, Steven W. Holubar. Joined with it is a claim for injuries suffered by Shannon, Holubar’s minor daughter. Holubar was killed when the truck in which he and Shannon were riding collided with a Ford camper van driven by the defendant Debra S. Bridgers.[1] The State through the Department of Transportation and Development (DOTD) was also named as a defendant on the ground that the traffic control devices in the vicinity of the accident were inadequate to warn motorists of abnormal, dangerous traffic conditions on that section of the highway.
The trial court found negligence on the part of both defendants. DOTD and Mrs. Bridgers appeal the findings of negligence against them and plaintiffs ask for an increase in the award for loss of future support.
The collision out of which this suit arose occurred in the late afternoon of Sunday, May 1, 1977, on U.S. Highway 190 on the Amite River Bridge. In the vicinity of the accident, Highway 190 is a divided, four-lane highway with separate bridges for eastbound and westbound traffic. On the Friday preceding the collision, the state police closed the south bridge, which carries eastbound traffic, to facilitate work on a gas line under the bridge. When Robert Adams, the district traffic engineer, was informed of the closure of the south bridge Friday morning, he and his crew went to the scene to erect signs to direct eastbound traffic on to the north bridge and to warn westbound vehicles that a section of the highway was carrying two-way traffic.
Plaintiffs and defendant Bridgers assert the signs erected for westbound motorists were deficient in informing motorists of the two-way traffic situation. Mrs. Bridgers, who was traveling to the west, testified that after passing a barricade, she moved into the left lane as she was unaware the road was carrying two-way traffic until she saw on-coming vehicles in her lane. At that point she was unable to avoid a head-on collision with Holubar. She explained she thought the barricade was there to mark an obstruction in the road, such as a pothole, and that she never saw any signs advising her of two-way traffic.
Photographs taken by Adams on the morning after the accident show the traffic control devices alleged to have been in place at the time of the accident. The first sign for the westbound motorist was a black-on-orange sign on the right side of the road with the legend “Left Lane Closed Ahead.” The second sign was also black-on-orange and read “Left Lane Closed 1000 Ft.” Next came two black-on-yellow signs, on opposite sides of the road, reading “Left Lane Closed 500 Ft.” Then began a taper of approximately 660 feet to channel traffic into the right lane. The taper consisted of smudge pots and cones. At the end of the taper was an orange-and-white, three-board barricade across the left lane. Shortly before the barricade, there was a 24" X 30" black-on-white “Two Way Traffic” sign on the right shoulder. The barricade was placed a few feet before the entrance to the relief bridge. Between the relief bridge and the Amite River Bridge, a distance of approximately 816 feet, the road makes a curve to the right. On this stretch of road on the right shoulder facing westbound traffic, there were two more 24" X 30" black-on-white “Two Way Traffic” signs. These were the only signs for westbound traffic prior to the point of collision.
Adams and the three expert witnesses in traffic engineering compared the signs erected by DOTD with those recommended *364 by the Department of Highway’s Traffic Control Devices Manual. None of the traffic control devices used were in strict compliance with the manual. However, as DOTD correctly points out, failure to comply with the manual does not constitute negligence per se. Norris v. State, 337 So.2d 257 (La.App. 3d Cir. 1976).
The standard to which DOTD is held has been stated by this court as follows:
“No hard-and-fast rule can be laid down as to the type of warning which should be given other than that the warning should be of a size and nature commensurate with the danger ahead, and they should be reasonably adequate for the intended purpose. In determining what is reasonable warning, the place at which the danger exists, the nature of the road, and the general situation and circumstances surrounding it are to be taken into consideration, as are also the kind of travel and the speed at which vehicles will probably travel on the road.”
Edwards v. State, Department of Highways, 271 So.2d 672, 676 (La.App. 1st Cir. 1972).
Plaintiffs’ experts, Nathan Ficklin and Duane Evans, testified that the signs used were inadequate and that the lack of effective warning devices was a cause of the collision. Both thought that due to the curve, passing should have been prohibited by the use of “Do Not Pass” signs on both shoulders along with temporary striping. They also felt there was inadequate warning of the two-way traffic situation after the barricade. Ficklin and Evans stated it would not be unusual for a motorist in the left lane traveling along a right curve to miss a black-and-white “Two Way Traffic” sign located on the right shoulder. They opined more “Two Way Traffic” signs, placed on both the left and right shoulders, should have been used and that instead of the rectangular black-on-white signs, DOTD should have erected larger diamond-shaped, black-on-orange signs with a symbol and word legend. Plaintiffs’ experts also pointed out that except for the three “Two Way Traffic” signs, the traffic control devices used were just like those employed to direct motorists around a bad pothole.
In contrast, Adams and Olin K. Dart, DOTD’s expert, testified the signs used gave sufficient warning to westbound motorists. However, both acknowledged the sign configuration recommended by the manual was preferable to that employed by Adams. Adams admitted he would have used the signs shown in the manual and “Do Not Pass” signs had those signs been available to him. But he made no effort to contact the central sign shop in Baton Rouge to see if the signs could be obtained.
Plaintiffs offered the testimony of several witnesses who had traveled this section of highway after the signs were erected on Friday. Some of these witnesses were in the vicinity when the collision occurred. Mr. and Mrs. Clifton Hufsteder testified that when they were driving west on Sunday, they had an experience very similar to that of Mrs. Bridgers, except they were fortunately able to avoid a collision. Mr. Hufsteder, the driver, said he pulled into the left lane after passing the barricade because he thought the barricade marked a pothole and he saw no signs indicating two-way traffic. It was only when his wife screamed that he realized there was oncoming traffic in his lane of travel. Alton Sullivan and his passenger Dwayne Cobb related that when they were traveling west to Baton Rouge on Sunday they too moved into the left lane after passing the barricade but were able to get back into the right lane when they spotted eastbound vehicles in their lane. They did not remember seeing any signs warning them of two-way traffic. Jack Dempsy was traveling eastward on Friday when he first encountered the closed bridge and the diversion of eastbound traffic. On a subsequent trip west to Baton Rouge on Saturday, he was aware of the two-way traffic situation but he witnessed another westbound vehicle move into the left lane after the barricade and narrowly avoid a collision. On the other hand, Pat Hicks, who testified for DOTD, stated she saw the signs warning westbound motorists of two-way traffic.
*365 Mrs. Bridgers was unable to remember anything that happened after she passed the barricade and pulled into the left lane. Jack Dempsy testified Mrs. Bridgers tried to pass him before the relief bridge, but she had to pull back because of the barricade. After the barricade, she pulled past him on the left at 40 to 45 miles per hour. She stayed in the left lane and pulled 200 feet ahead. When the van was a short distance from the Amite River Bridge, Dempsy saw the van go out of control. Mrs. Bridgers lost control when she swerved to avoid hitting Pat Hicks, who was moving eastward in the same lane as the Bridgers’ van. Mrs. Hicks testified that when she first saw the van it was only about four car lengths ahead and had started to swerve. She estimated her speed at 45 miles per hour and put the van’s speed at 60 to 70 miles per hour. After the van passed, she looked in her rearview mirror and saw the van, still out of control, collide with the truck behind her.
We think the trial court was correct in finding DOTD negligent. The signs erected after the barricade were woefully inadequate to warn reasonably prudent westbound motorists of the conversion of two-way traffic. A motorist whose attention was focused on the barricade and who then moved into the left lane could easily miss the three black-and-white “Two Way Traffic” signs on the right shoulder. There was certainly nothing about the barricade or the preceding signs and markers which would inform motorists of the dangers past the barricade.
On the question of Mrs. Bridgers’ negligence, we find manifest error in the holding of the trial court. The trial court listed three negligent acts by Mrs. Bridgers: (1) driving at an excessive rate of speed under the circumstances; (2) keeping an improper lookout; and (3) failing to keep her vehicle under proper control. The record does not sustain these findings.
It is clear the trial court did not think Mrs. Bridgers was negligent in failing to see the signs warning of two-way traffic. The court characterized the witnesses who had missed these signs as “reasonably prudent.” In light of her reasonable belief that she was traveling on a four-lane highway, Mrs. Bridgers’ actions were not imprudent. There is nothing to indicate Mrs. Bridgers should have seen the on-coming traffic sooner. While it is true she lost control of her vehicle, she was merely trying to extricate herself from an emergency situation which had been created by the negligence of DOTD. Her speed, under the circumstances as she reasonably perceived them, was not so excessive as to constitute negligence. The trial court was in error to judge her actions against the standard of a driver who was aware of the conversion of two-way traffic.
We find no abuse of discretion in the trial court’s award for loss of future support. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The court awarded the two children $50,000 each for loss of support and gave a lump award of $250,000 to the surviving spouse for loss of future support, love and affection. $28,908 was awarded to cover loss of support for the period between the accident and trial.
Plaintiffs complain the sum awarded is at least $150,000 less than that calculated by their expert in economics. However, it is a well-settled rule that future loss of earnings cannot be calculated with absolute, mathematical certainty and that damages for future loss are to a certain extent speculative in character. In fixing quantum, the court is not bound by mathematical formulae as such things only serve as guideposts and checkpoints in detecting the reasonableness of the award. The most the courts can do is to exercise sound judicial discretion and award such amount as, all the circumstances considered, may seem, just to both litigants. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968); Roundtree v. Technical Welding and Fabrication Company, Inc., 364 So.2d 1325 (La.App. 4th Cir. 1978); Aymond v. State, Department of Highways, 333 So.2d 383 (La.App. 3d Cir. 1976). Considering the decedent’s earnings *366 at the time of his death, his potential for earning and his education and background, we conclude the award to be adequate.
For the foregoing reasons, the judgment below is affirmed in part and reversed in part. DOTD is cast for court costs in the amount of $969. Plaintiffs are to pay all remaining costs.
AFFIRMED IN PART and REVERSED IN PART.

. Also sued were Mrs. Bridgers’ husband, Z. Ross Bridgers, and her insurer, State Farm Mutual Automobile Insurance Company. The trial court dismissed the claim against Mr. Bridgers; this ruling is not disputed on appeal.