357 So.2d 1269 (1978)
Clyde DARBONNE, Plaintiff-Appellee,
v.
ALLSTATE INSURANCE COMPANY et al., Defendants-Appellants.
No. 6334.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1978.
Writ Refused June 9, 1978.
*1270 William J. Doran, Jr., Baton Rouge, and Devillier & Ardoin, J. Winston Ardoin, Eunice, for defendants-appellants.
Morrow & Morrow, Patrick C. Morrow, Opelousas, for plaintiff-appellee.
Richard B. Millspaugh, Opelousas, Voorhies & Labbe, William M. Bass, Lafayette, for defendant-appellee.
Before DOMENGEAUX, WATSON, GUIDRY, FORET and CUTRER, JJ.
GUIDRY, Judge.
This damage suit arises as a result of a head-on collision between a pick-up truck driven by Herman Ledoux and a motorcycle operated by Johnny Ray Stoute. Clyde Darbonne was riding as a passenger on the motorcycle operated by Stoute. The accident occurred June 20, 1976 on Louisiana Highway 741, St. Landry Parish, shortly after midnight. As a result of the accident Stoute and Darbonne received critical injuries and died, the latter some five days post accident. Ledoux died, from unrelated causes, prior to trial.
Suit was instituted following which Darbonne's widow, Victoria Lynn Savoie Darbonne, was substituted as party plaintiff, *1271 individually and on behalf of her minor son, Anthony Paul Darbonne. Named as defendants were Herman Ledoux, Allstate Insurance Company, Ledoux's insurer, and the Louisiana Department of Highways (Department). The Department filed answer denying any responsibility for the accident and impleaded the Succession of Johnny Ray Stoute and Herman Ledoux as third party defendants. By supplemental petition plaintiff, Darbonne, joined Cavalier Insurance Corporation, insurer of Stoute, as a defendant, alleging that Ledoux was an underinsured motorist.
Ledoux's widow, Enola Carriere Ledoux, and his surviving child, Katherine Ledoux Fontenot, were substituted as defendants after Ledoux's death. Subsequently, Mary Katherine Ledoux Fontenot, administratrix of the succession, was substituted as defendant for the widow and surviving child. Stoute's widow and succession representative, Brenda Gail Rivette Stoute, was substituted as a defendant. Cavalier Insurance Company filed a third party demand seeking indemnification, subrogation and contribution from the Succession of Ledoux and/or the Department.
Plaintiff's claims against Ledoux and Allstate were compromised just prior to trial and they were dismissed as principal defendants. The instrument or document releasing Ledoux and Allstate does not appear in the record. The only evidence of such release is the trial court's order dismissing plaintiff's suit as against these parties.
The trial court, in written reasons, concluded that Ledoux was clearly negligent, being intoxicated and in the wrong lane of traffic. The trial court also determined that the Department was negligent for failing to re-stripe Louisiana Highway 741 with a center line and/or place signs warning of the absence of a center line and that such negligence was a cause in fact of the accident. The Department was cast in judgment and given judgment over against Ledoux for one-half of the amounts awarded. All demands against Stoute and Cavalier Insurance Corporation were dismissed. Plaintiff, individually and as representative of her minor child, was awarded the total sum of THREE HUNDRED FOURTEEN THOUSAND ONE HUNDRED EIGHTY-FIVE DOLLARS AND NINETEEN CENTS ($314,185.19).
The Department has appealed suspensively, contending that the trial court erred in: not finding Ledoux's negligence to be the sole cause of the accident; finding the Department guilty of any negligence causing the accident; not finding the action against the Department barred by Ledoux's release; not giving the Department credit for one-half the judgment because of Ledoux's release; and, awarding excessive damages. Plaintiff has answered the appeal disputing the trial court's finding of negligence on the part of Ledoux.
All of the parties who were actually involved in this accident died prior to the trial of this matter. The only evidence available to the court with regard to the happening of the accident and the physical facts relating thereto is the testimony of Trooper First Class John Pitre, who investigated the accident, arriving at the scene shortly following its happening. Other pertinent information concerning the roadway is established by the testimony of various employees of the Department who testified. From this evidence we glean the following uncontroverted facts.
Louisiana Highway 741 (St. Landry Parish), which runs generally north-south, is a typical country black-topped road, the roadway being 21.5 feet wide with relatively wide unimproved (grassy) shoulders on each side. The surface of the roadway was resealed on June 3, 1976, seventeen days prior to the accident. Because of the resealing there was no centerline striping on the roadway at the time of the accident. A roadway resurfaced with the material used on Highway 741 (asphalt and black gravel) must cure for several weeks before it can be re-striped because prior to curing the marking material will not adhere to the asphalt. There were no signs warning of the absence of a center line.
*1272 The accident occurred in flat open country at the most northern portion of a long mild curve, which curves to the left for motorists proceeding in a northerly direction. Vision from the beginning to the end of this long curve, approximately one-quarter mile, is completely unobstructed.
The vehicle driven by Ledoux was traveling north and the motorcycle operated by Stoute, with Darbonne as a passenger, was proceeding south. A head-on collision occurred when the Ledoux vehicle moved completely over into the south bound lane striking the motorcycle, the point of impact being fixed at approximately two feet nine inches (2'9") from the west edge (shoulder edge) of the south bound lane.
With regard to Ledoux's physical condition at the time of accident, Trooper Pitre testified as follows:
"Q. Did you have an opportunity to observe his physical condition at that time?
A. Yes, Sir.
Q. Can you tell me what his condition was?
A. Intoxicated."
With regard to the degree of Ledoux's intoxication, Trooper Pitre testified as follows concerning the results of certain tests administered by him to Ledoux at Troop K headquarters some two hours post accident:
"A. Balance while standing was swaying; while walking stumbling. Turning while walking, was hesitant in making the turn and swaying at the time. Finger to nose test using the right finger he was hesitant but he completed that successfully and using the left he missed."
Trooper Pitre also testified about conversations at the scene of the accident with Darbonne and Ledoux. This testimony was permitted by the trial court, without objection, as part of the res gestae. Trooper Pitre stated that in response to his questioning of each with regard to the position on the roadway of each vehicle at the time of collision Mr. Darbonne stated that the Ledoux vehicle was in his lane of traffic; and, Mr. Ledoux stated that he did not know the position of his vehicle on the highway at the time of collision because he was blinded by a headlight.
On the basis of the above evidence the trial judge concluded that Ledoux was negligent and that his negligence was a cause in fact of the accident. The trial court held that the Department was also negligent reasoning as follows:
"Accordingly, this Court finds that even though the driver of the oncoming vehicle, Mr. Ledoux was under the influence, the fact that he could not find his position on the highway; the fact that striping was not present; the fact that the luminous material, for night aid, was necessarily missing, as it was normally put down mixed in the paint constituting the striping, it is more probable than not that the absence of the striping with its luminous paint was a contributing factor and a cause in fact and/or a proximate cause of the accident."
"The `blinding light', in the opinion of the Court, adds force to the Court (sic) finding and conclusion. If Mr. LeDoux was `blinded', it seems to the Court that the importance of the center line and the luminous paint grows, and the Court is of the opinion that in this situation he would have had guidance and something to cling to, as he had come this far without mishap, through marked areas."
.....
"The attorney for Plaintiff argues that the road curved, and Mr. LeDoux went straight, which he would not have done had the center line been there to guide and help him. This Court believes this to be true."
We find the trial court's conclusion as to the negligence of Mr. Ledoux and its causal connexity with the accident clearly correct. In Simon v. Ford Motor Company, 282 So.2d 126 (La.1973) our Supreme Court reiterated the rule to be applied with regard to the liability of a driver who is involved in a collision in the opposing lane of travel:

*1273 "When a driver on his wrong side of the road collides with another car which is in its correct lane of traffic, the driver is required to exculpate himself of any fault, however slight, contributing to the accident. . . (citations omitted)."

In the instant case, there is no evidence whatsoever to exculpate Ledoux from fault.
We find the trial court's conclusion that a causal relationship existed between the harm to plaintiff's decedent and the Department's allegedly negligent conduct to be manifestly erroneous.
There is no testimony or other evidence in the record, expert or otherwise, to show that the absence of the center line had anything whatsoever to do with this accident. There is no evidence that when Mr. Ledoux was allegedly blinded by the headlight of the motorcycle he looked down at the roadway but could not orient himself because of the absence of markings on the asphalt surface. In his statement to Trooper Pitre, Mr. Ledoux made no mention whatever of the center line or his inability to orient himself on the roadway because of its absence. If Mr. Ledoux was in fact completely blinded by the headlight, he could not have seen a center line had it been there. On the other hand, if he was not blinded to such degree and he did become disoriented there were other physical characteristics of the roadway which were plainly visible and which should have served to orient a reasonably prudent driver as to location. The photographs taken by Trooper Pitre shortly following the accident (Exhibits P-5, 6, 7, 8 and 10) reflect that the edge of the roadway and the beginning of the shoulder is clearly discernible at night. The trial court's determination that the road curved, and Mr. Ledoux went straight, and the trial judge's inference that this would not have occurred "if the center line had been there to guide and help him" is not borne out by the record. The record clearly indicates that the curve turned left (Tr. pg. 29). Under such circumstance, applying the trial court's reasoning, the Ledoux vehicle would not have proceeded directly in the path of the motorcycle but rather would have moved off the road to the right and away from the south bound lane.
We are aware that reversible error exists as to a factual conclusion only where there is a complete absence of probative facts to support a reasonable inference by the trier of fact. Canter v. Koehring Company, 283 So.2d 716 (La.1973). In this case, although there are facts supporting the conclusion that Ledoux was blinded by an oncoming light while coming out of a mild curve, there is a total absence of probative facts to infer that upon such happening he looked down at the roadway, became disoriented and veered into the opposite lane of traffic, because there was no center line striping to guide him. In our view this is not a reasonable inference based on probative evidence, but rather an inference based on speculation and conjecture. Accordingly, we conclude that the trial court's determination that the absence of highway markings was a cause in fact of this accident is manifestly erroneous and must be reversed.
In view of this conclusion it is unnecessary that we address the other issues raised by the Department on appeal including whether, under all circumstances the Department is under a duty to center stripe all highways and/or whether in the absence of center striping the Department is under a duty to post warning signs. However, in connection with the latter we observe that a reasonably prudent driver need not be warned of conditions which are patent and obvious. Norris v. State, 337 So.2d 257 (La.App. 3rd Cir. 1976). The fact that a highway has no center striping should be obvious and apparent to the dullest.
For the above and foregoing reasons the judgment of the trial court is reversed insofar as it casts the Department in damages and costs to the plaintiff and awards the Department judgment against Herman Ledoux for an amount equal to one-half (½) of the amount of judgment and it is now ordered, adjudged and decreed that plaintiff's suit against the Louisiana Department of Highways, as well as the Department's *1274 third party demand against Herman Ledoux and the Succession of Johnny Ray Stoute, are ordered dismissed with prejudice. In all other respects the judgment appealed from is affirmed. Costs of this appeal are assessed to plaintiff-appellee.
REVERSED IN PART AND RENDERED: AFFIRMED IN PART.
DOMENGEAUX, J., concurs and assigns reasons.
WATSON, J., dissents and assigns written reasons.
DOMENGEAUX, Judge, concurring.
I agree with the majority opinion and conclude that the absence of a center stripe on the highway had absolutely nothing to do with this unfortunate accident. This is true here as it was in the case of Norris v. State, 337 So.2d 257 (La.App. 3rd Cir. 1976), and the legal pronouncements in Norris are applicable to this case. The sole proximate cause of this accident was the negligence of the decedent, Mr. Ledoux. In order to hold the Highway Department responsible we would have to indulge in rank speculation and conjecture. The record is absolutely devoid of any evidence which causally faults the Department.
WATSON, Judge, dissenting:
I respectfully dissent:
One can speculate that this accident was caused solely by Ledoux's intoxication and negligence. However, Trooper Pitre quoted Ledoux as saying:
"He told me at that time, he said he was blinded by the headlight and he didn't know where he was when the collision occurred." (TR. 31).
The trial court inferred from this that Ledoux, coming out of a curve, blinded by the oncoming light, looked down the roadway, could not orient himself because of the absence of any markings on the dark asphalt, and veered into the wrong lane, making the absence of markings an additional cause in fact of the accident. It is common knowledge that a driver whose full vision of the highway is impaired by oncoming lights can ordinarily look down and see something of the pavement immediately in front of him. Compare Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377 (1940), and Emerson v. Bailey, 102 N.H. 360, 156 A.2d 762 (1959). In Emerson plaintiff was able to stay in her lane while so blinded by "... watching the yellow line. . ." 156 A.2d 764. When a highway is completely unmarked, with neither side nor center lines, a semi-blinded driver can become disoriented and lose his way as Ledoux did here. Absence of highway markings can be regarded as a substantial factor in the resulting accident.
An act of omission need not be the sole cause of an injury to be a cause in fact. Other causes may have contributed but an act or omission is a cause in fact if it was a material element and a substantial factor in bringing about the result. It can be a pre-existing passive condition which plays a material part in bringing about the event. Causation:
"... is a question of fact. It is, furthermore, a fact upon which all the learning, literature and lore of the law are largely lost. It is a matter upon which any layman is quite as competent to sit in judgment as the most experienced court. For that reason, in the ordinary case, it is peculiarly a question for the jury." Prosser, Law of Torts, 4th Ed., p. 237.
* * * * * *
"If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists." Prosser, Law of Torts, 4th Ed., p. 242.
Factual causation is an issue to be resolved at trial. Pence v. Ketchum, 326 So.2d 831 (La., 1976). Reversible error exists as to a factual conclusion about causation only when there is a complete absence of probative facts to support a reasonable inference by the trier of fact. Canter v. *1275 Koehring Company, 283 So.2d 716 (La., 1973); Simpson v. Logan Motor Company, 192 A.2d 122 (D.C.App., 1963). The trial court's conclusion that the absence of highway markings was a cause in fact of this accident is not manifestly erroneous.
The second question is whether the Department of Highways was under a duty to protect Darbonne against the risk of a driver crossing into the wrong lane of traffic by marking the center line.
A duty to mark highway lanes is established by the testimony of the highway department employees, Norckeuer, Watkins and Hebert; by statute, LSA-R.S. 48:341; and the Department of Highways' manual.
LSA-R.S. 48:341, entitled "Channeling traffic by lines", states:
"In the interest of the safety and convenience of motor vehicle operation, appropriate geometric designs and traffic regulatory devices shall be employed to provide separate channels for the movement of vehicles traveling in different directions and to regulate the maneuvering of vehicles within and between these traffic streams."
The Department of Highways "Traffic Control Devices Manual" (P-48) provides that:
"A center line separates traffic traveling in opposite directions. It need not be at the geometrical center of the pavement....
"The center line markings on two-lane, two-way highways shall be either: * *" page 181. (emphasis ours).
The manual defines the meaning of "shall" at another point:
"In the Manual sections dealing with the design and application of traffic control devices, the words `shall,' `should' and `may' are used to describe specific conditions concerning these devices. To clarify the meanings intended in this Manual by the use of these words, the following definitions apply:
"1. SHALLA mandatory condition. Where certain requirements in the design or application of the device are described with the `shall' stipulation, it is mandatory when an installation is made that these requirements be met. * * *" pages 5-6.
The intent of the above provisions is, as stated in LSA-R.S. 48:341, to promote safe motor vehicle operation and thereby protect citizens on the highways both from themselves and others. Darbonne was among those whose protection was intended. Clearly, the purpose of marking traffic lanes is to guard against what occurred here, an automobile crossing into the wrong lane of the highway.
The next question is whether failure of the Department of Highways to restripe this highway or provide warning signs was "negligent, substandard, blameworthy"[1] or such conduct for which the law ought to permit recovery.
Failure by the Department to comply with the requirements of its manual is not in and of itself negligence. Vervik v. State, Department of Highways, 302 So.2d 895 (La., 1974). The absence of center striping on this highway was as obvious as a warning sign would have been and apparent to a prudent driver. Thus a warning sign would have been useless. Norris v. State, 337 So.2d 257 (La.App. 3 Cir. 1976). However, the Highway Department owes the public a duty of reasonable care in maintaining the state highways, particularly where a specific statutory requirement is imposed. The trial court concluded that the Highway Department was derelict in that duty as to this particular highway and thus negligent. The evidence was that this highway was restriped on July 7, after the accident on June 20.
Hebert, the striping foreman, testified that he was not notified highway 741 had been resealed with asphalt on June 3. A road resealed with asphalt and black gravel like this one must cure for three or four weeks before it is striped. A new blacktopped or concrete road can be restriped immediately but one with loose gravel has *1276 to cure. It was restriped in July merely because Hebert's crew happened to be in the parish on their regular schedule at that time. Hebert has one truck or striping machine and receives his orders from Baton Rouge. He moves from parish to parish as ordered. Hebert has no particular criterion for determining whether a roadway can be restriped but decides from observation when it is ready. The particular stretch of highway 741 where the accident occurred is normally marked with a dashed yellow line and a solid yellow line in the curve to indicate a no passing zone. The decision as to whether a curve should have a solid line is made by Hebert. He follows the Highway Department manual. Orange cones could have been used to indicate a center line but Hebert believed they would have caused accidents, since the wind from large trucks blows them over. Protective tape would not have stayed on the loose gravel present after resealing, and Hebert's crew does not put down raised metal reflectors.
Watkins testified that resealing is a process whereby asphalt and small aggregate is placed on a roadway. The resealing crews report to a Mr. Stagg, who is under Watkins' supervision. Watkins identified a work report showing resealing on Louisiana Highway 741 on June 3, 1976. Warning signs are used during the resealing process but not during restriping, although both are regarded as maintenance. Restriping is not under the jurisdiction of the various highway districts, which have no control over how it is scheduled. Before trial a procedure had been inaugurated whereby Baton Rouge is notified that a roadway is ready to be restriped. This procedure was not in effect in June of 1976, and the Baton Rouge office was not notified that highway 741 had been resealed and the center stripe obliterated. Watkins testified that the lightweight aggregate used for resealing would not hold any type of marking material until it cured, as far as he knew. In his opinion, reflecting tape, which can be applied to asphalt and concrete, would not stay in place on surface treatment. However, the aggregate is more inclined to stick and resealing is more successful during the summer when the weather is hot. The procedure is therefore not performed during December, January and February. The aggregate does not actually cure but merely ages until it is likely to remain where it is.
Norckeuer testified that Hebert works under him. There is no set procedure whereby Norckeuer's office is advised that a roadway needs to be restriped. The determination is made by visual examination. A first striping is sometimes done too soon and must be repeated in a few months. According to Norckeuer's records, highway 741 was not striped at the time of the accident. He was not aware of any type of temporary marking which could have been used. Norckeuer did not recall any highway department discussion of this point and said that the Department had never considered lack of center lines a problem although conceding such a situation poses an additional danger, particularly at night. He had not inspected highway 741 at the time of the accident but was of the opinion that it was too soon for it to be striped. However, he admitted that restriping can sometimes be done two weeks after a roadway is resealed. The time varies from two to three weeks as the aggregate is blended into the road surface. There is no set procedure. Norckeuer interpreted the Department of Highways' manual as requiring striping as soon as practical.
The procedures followed by the Highway Department show a cavalier attitude to correction of a dangerous situation created by acts of their employees. No attempt was made to ascertain if this particular highway was ready to be restriped. It is quite possible that, at the time of this accident, 17 days after the resealing, a striping process would have been successful. The uncontradicted evidence is that the maintenance of a highway without a center line is dangerous. There is no proof that a center line on this highway was not feasible at the time of the accident. The Highway Department was aware that the defect existed and knew that it constituted a danger to motorists. Cain v. Houston General Insurance Co., 327 So.2d 526 (La.App. 2 Cir. 1976), writ denied *1277 La., 330 So.2d 279. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La., 1975). Under these circumstances, failure to follow some procedure whereby a center line could have been provided at the earliest possible time created an undue risk of harm to the motoring public and constitutes negligence on the part of the Department of Highways.
Therefore, I respectfully dissent.
NOTES
[1] As phrased by Prof. Robertson in "Dialogues on Hill v. Lundin " 34 La.L.R. 1 at 22.